[L. A. No. 27924. In Bank. Oct. 22, 1964.]

CORONA UNIFIED HOSPITAL DISTRICT et al., Petitioners, v. THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent; RICHARD W. MANGAN, Real Party in Interest.

---

*Retired Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Clayson, Stark, Rothrock & Mann and Roy H. Mann for Petitioners.

No appearance for Respondent.

Walker, Sullivan, Hews, Brown & Yakutis and Alexander B. Yakutis for Real Party in Interest.

SCHAUER, J.*—By this proceeding in prohibition the Corona Unified Hospital District (hereinafter called the district) and the Corona Unified Hospital District Leasing Company (hereinafter called the leasing company) seek to restrain the Riverside Superior Court from taking any further steps in a taxpayer's action challenging the validity of a statute authorizing use of the "lease-back" method of financing public hospital construction in certain limited situations. As will appear, we have concluded that (1) the sole ground of the underlying superior court action (i.e., alleged unconstitutionality of Health & Saf. Code, § 32221, par. 2, quoted hereinafter) is unmeritorious; (2) the subject action appears to have been instituted for the purpose of defeating the consummation of a valid community project for the construction of a public hospital; and (3) the mere pendency of the action will have that effect, for even though the district and the leasing company have prevailed on demurrer, the normal delays incident to an appeal will cause the financing arrangements—and hence the entire project—to fail. In these circumstances, relief by way of prohibition is necessary to prevent the frustration of a remedial statutory purpose and the defeat of a valid project for public health and safety.

The principal allegations of the petition may be summarized as follows: For more than 10 years prior to 1961 various community groups had unsuccessfully sought to obtain modern hospital facilities for the Corona area; the present hospital district was voted into existence in June 1961 by a 2½ to 1 ratio of voter approval; it thereupon conducted surveys, consultations, and architectural planning, which culminated

*Retired Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

in a proposed hospital design in late 1962. A bond issue to finance the building of such hospital was submitted to an election in February 1963, but although it was approved by a majority of the voters it fell short of the two-thirds approval necessary for adoption. The district then proposed that the hospital be built by a nonprofit corporation to be created for that purpose, which would in turn lease the facility to the district; that the project would be financed by bonds to be sold by the leasing company; that rentals (to service such bonds) would be paid by the district from hospital revenues and if necessary from taxes; and that title to the hospital facility would eventually vest in the district.

Effective September 20, 1963, Health & Safety Code section 32221 (which places certain limitations on the power of a hospital district to expend its "fund for capital outlays") was amended by adding the following second paragraph: "Notwithstanding the provisions of this section, nothing in this article shall limit the power of a district formed after June 1, 1961, which, prior to the adoption hereof, has not operated a hospital or established a fund for capital outlay, to lease, leaseback, lease with option to purchase or lease with provision for title to vest in the district on termination, hospital buildings or facilities with rentals to be paid from revenues and taxes, subject to the limitation prescribed by section 32203, provided any such lease is entered into prior to June 1, 1964."

The petition further alleges that in November 1963 the leasing company was duly organized as a nonprofit corporation for the purpose of issuing its bonds to finance construction of the hospital project; that in the ensuing months the district exercised its option on the building site selected, the site was annexed to the City of Corona, the building plans were prepared and approved by all the necessary agencies, a construction contract was entered into, the lease to the district was drawn and executed, the bond counsel gave their unqualified favorable opinion as to the validity of the bonds to be sold by the leasing company, a "tax-free" ruling on the bonds was obtained from the Internal Revenue Service, the entire bond issue was subscribed for at a favorable interest rate, and the Commissioner of Corporations was prepared immediately to issue a permit for the sale of the bonds. Nothing remained but the mechanics of the bond sale and transfer of funds, which were scheduled to take place on May 26, 1964.

On May 25, however, one Richard W. Mangan filed an action against the district and the leasing company (Riverside Superior Court No. 82368, hereinafter called the Mangan action) to have the lease declared void and to have the district enjoined from levying any tax to carry out the lease agreement. The filing of that action prevented the leasing company from executing a "no-litigation certificate" which is a condition precedent to the bond sale, and that sale has accordingly been postponed.

Petitioners (the district and the leasing company) now seek prohibition to restrain the superior court from taking any further steps in the Mangan action, on the ground that even though they have been successful in that action at the trial level[1] the entire hospital project will nevertheless be destroyed by the normal delays incident to an appeal. The following considerations govern our decision to issue the peremptory writ:

■ 1. *There appears to be no other plain, speedy, and adequate remedy in the ordinary course of law.* The absence of another adequate remedy is determined by the granting of an alternative writ (*City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236, 243 [1] [1 Cal.Rptr. 158, 347 P.2d 294]); yet because of the unusual facts of this case—i.e., petitioners have prevailed thus far in the underlying action by their successful demurrer—it is appropriate to spell out more fully our reasons for making such determination. As noted above, the immediate effect of the filing of the Mangan action was to prevent the leasing company from executing the required "no-litigation certificate" and hence resulted in postponement of the bond sale until that action is *finally* disposed of, i.e., including appeal and petition for hearing in this court. In the peculiar circumstances here shown, however, a number of further consequences flow from that postponement.

a) *Loss of construction contract*: that contract was expressly made contingent on the sale of the leasing company's bonds prior to June 30, 1964; petitioners allege that failure to consummate that sale has released the contractor from his obligations.

b) *Loss of site*: because the leasing company has no funds other than those anticipated from the bond sale, it could

---

[1]The court sustained without leave to amend petitioners' demurrer to Mangan's amended complaint, and by minute order ruled that "judgment of dismissal is ordered entered herein."

not close the escrow prior to the July 8 deadline. The owners of the site are said to have received a more attractive offer to sell, and petitioners allege that it is therefore "extremely unlikely that the site will be available" if the planned purchase is not timely completed.

c) *Loss of benefit of statute*: it is alleged that if petitioners are thus unable to acquire the precise site which is the subject of the lease, then the entire "lease-back" financing project will fail. This appears to be so because (1) a lease of some new site would have to be entered into, and that would now have to be done after June 1, 1964; (2) the bond counsel have advised that they cannot give their unqualified opinion as to the validity of such a lease entered into after June 1, 1964, for that was the cut-off date for the authorization to "lease back" granted by Health and Safety Code section 32221, paragraph 2, without which a serious legal question exists as to the validity of that form of financing when undertaken by a public hospital district; and (3) such refusal of bond counsel to give their unqualified opinion will in turn preclude the sale of the bonds.

d) *Loss of money*: it is alleged that if petitioners are thus unable to finance and carry through this specific hospital project the district will lose the benefit of some $115,000 already expended in preparation therefor (fees of architects, hospital consultants, and attorneys).

None of the foregoing allegations is denied by Mangan in his return and answer. Each of the mentioned losses will be incurred even though petitioners have prevailed in the trial court: on an appeal by Mangan the judgment would not ordinarily become final, in the current state of the appellate calendar, until some 15 to 18 months after entry, but neither the site owner nor the parties to the financing arrangements are willing or able to hold the matter in abeyance that long.[2]

It is true, generally speaking, that an appeal does not "fail to be adequate and speedy within the meaning of the applicable rule simply because it is not so expeditious as prohibition" (*Brock* v. *Superior Court* (1947) 29 Cal.2d 629, 639 [3] [177 P.2d 273, 170 A.L.R. 521]); but that principle—to which we adhere—has no application to the rare case where, as here, an appeal would not only be inexpeditious but would also be totally ineffectual to protect the rights of

[2]Petitioners inform us that an extension of time has been granted by these parties until there is a decision in the present proceeding for writ of prohibition.

the prevailing party. In a very similar situation we held that where simply "the inevitable passage of time" involved in processing a suit for injunction might frustrate a plan for low-cost public housing, an appeal will not save the rights of the parties and the "only adequate remedy" is prohibition. (*Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550, 556 [3] [219 P.2d 457]; see also *Santa Clara County* v. *Superior Court* (1949) 33 Cal.2d 552, 559 [4] [203 P.2d 1].)

█ 2. *The trial court appears to be acting "without or in excess of jurisdiction," as that term is used in relation to the remedy of prohibition.* █ In this context, of course, "[I]t is not necessary that there be a lack of jurisdiction over the subject matter or parties in the fundamental sense but only that there be a want or excess of the power of the court as defined by statute or by rules developed and followed under the doctrine of *stare decisis.*" (*City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 429 [2] [333 P.2d 745]; *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [3]-291 [4] [109 P.2d 942, 132 A.L.R. 715].)

█ Here, because of the time limitations inherent in the subject legislation—rendered crucial by the time of filing of the Mangan action—the trial court lacks the power to protect petitioners' statutory right to use the lease-back method of financing their public hospital project, for the mere entertaining of the action will, as noted above, destroy that project by "the inevitable passage of time" (*Housing Authority* v. *Superior Court* (1950) *supra*, 35 Cal.2d 550, 556 [3]). If a court thus lacks the power to protect the substantial rights of a litigant it has no "jurisdiction" over the cause in the *Abelleira* sense, for all jurisdiction must include the ability to *effectively* adjudicate the rights in issue. In these circumstances petitioners are entitled to a writ of prohibition to prevent further assertion of such destructive pseudo-jurisdiction over the fate of their public hospital project.

█ The challenged statute (Health & Saf. Code, § 32221, par. 2) is within the constitutional power of the Legislature to enact. Mangan's amended complaint charges primarily that the subject statute is a "local and special law" prohibited by California Constitution, article IV, section 25, paragraphs 19 and 33; lacks "general operation" within the meaning of article I, section 11; and confers a "special privilege or immunity" on the leasing company and its bondholders in violation of article I, section 21. But the statute is not subject to any such infirmity. The obvious purpose of the 1963 amend-

ment was to afford recently formed hospital districts the right to avail themselves of the advantages of "lease-back" financing; it was not necessary, of course, to afford such opportunity to districts already operating hospitals or which had already accumulated "capital outlay" funds from taxation. Such a classification is not unreasonable or "palpably arbitrary." (*State* v. *Industrial Acc. Com.* (1957) 48 Cal.2d 365, 371 [1] [310 P.2d 7].) It is true that the Corona Unified Hospital District falls within this classification; and we may assume it to be true, as Mangan alleges, that the Corona district was the motivating force behind the enactment of the subject statute. But it does not follow that the measure is unconstitutional as a "local and special law" or on any of the other grounds urged by Mangan: the benefits of this law were made generally available to *any* district formed after June 1, 1961 (and it appears that at least six districts were thus formed) which had not yet operated a hospital or established a capital outlay fund (and it appears that at least three of these six had not done so). In these circumstances the constitutional arguments become inapposite. (See *County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 801 [2] [31 Cal. Rptr. 302, 382 P.2d 342], and cases there cited; *Sacramento Municipal Utility Dist.* v. *Spink* (1956) 145 Cal.App.2d 568, 572 [2a]-573 [2b] [303 P.2d 46].) Indeed, similar "lease-back" arrangements between a public entity and a nonprofit corporation created by that entity have often been approved by the courts. (See, e.g., *City of La Habra* v. *Pellerin* (1963) 216 Cal.App.2d 99, 102 [3] [30 Cal.Rptr. 752], and cases there cited.)

Petitioners' hospital project, moreover, is a matter of substantial public importance. There appears to be a real need for hospital facilities in the Corona area, and the district was voted into existence by the people for the sole purpose of fulfilling such need. For the past three years the interested parties have worked diligently toward that end; every public agency to which the plans for this project were submitted has given its full approval (e.g., State Department of Health and Commissioner of Corporations); and the Legislature has recognized the importance of providing a means of solving the initial financing problems of such newly formed hospital districts (Health & Saf. Code, § 32221, par. 2). Viewing the case more broadly, it is also a matter of substantial public interest to authoritatively determine whether by the mere filing of an action attacking as unconstitutional (whether on

tenable grounds or not) the enabling legislation of a public agency, a valid and otherwise authorized project devoted to the health and safety of the public can be long delayed or permanently defeated. In *City & County of San Francisco* v. *Superior Court* (1951) 38 Cal.2d 156, 160 [2] [238 P.2d 581], we recognized that "this court may act [by writ of prohibition] in a proper case when it appears that otherwise a failure of justice will occur in a matter of public importance by a wrongful or excessive exercise of jurisdiction. The reviewing courts have frequently acted to resolve the problem on jurisdictional grounds where the public interest has indicated the necessity for prompt settlement of the issue." In all the circumstances of this case, we likewise conclude that "to leave the matter for possible correction on an appeal would be too late, would render that remedy inadequate and would result in a failure of justice." (*Id.* at p. 161 [3].)

The granting of relief by way of prohibition in this case should not be construed to mean that hereafter a litigant may with impunity delay matters at the trial level and then seek to review the judgment by extraordinary writ on the ground that an appeal would not dispose of the case in time. The unusual situation here presented was not brought on by the hospital district or the leasing company. There is no basis for concluding that they were in any way dilatory in preparing or accomplishing any of the many steps necessary to bring their project into being; rather, the present impasse arises from the fact that the Mangan action was filed on the last day before the bond sale, when only one week remained before self-executing termination of the statutory authorization to use the lease-back method of financing public hospital construction.

Let a peremptory writ of prohibition issue as prayed. This order is final forthwith.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.