[L.A. No. 29706. In Bank. June 30, 1970.]

ALHAMBRA CITY SCHOOL DISTRICT OF
LOS ANGELES COUNTY et al., Petitioners, v.
JAMES S. MIZE, as Executive Offiicer-Clerk, etc., Respondent

[L.A. No. 29707. In Bank. June 30, 1970.]

ALHAMBRA CITY HIGH SCHOOL DISTRICT OF
LOS ANGELES COUNTY et al., Petitioners, v.
JAMES S. MIZE, as Executive Officer-Clerk, etc., Respondent.

[L.A. No. 29708. In Bank. June 30, 1970.]

PASADENA UNIFIED SCHOOL DISTRICT OF
LOS ANGELES COUNTY et al., Petitioners, v.
JAMES S. MIZE, as Executive Officer-Clerk, etc., Respondent;
RALPH R. RULE, Real Party in Interest.

[L.A. No. 29709. In Bank. June 30, 1970.]

ROSEMEAD SCHOOL DISTRICT OF LOS ANGELES
COUNTY et al., Petitioners, v.
JAMES S. MIZE, as Executive Officer-Clerk, etc., Respondent.

## COUNSEL

John D. Maharg, County Counsel, Edward H. Gaylord and James W. Briggs, Assistant County Counsel, Burke, Williams & Sorensen, George W. Wakefield and Eric Olson for Petitioners.

Johnson & Stanton, Gardiner Johnson, Thomas E. Stanton, Jr., and Marshall A. Staunton as Amici Curiae on behalf of Petitioners.

Schell & Delamer, Richard B. Goethals, Martin A. Yester and Garrin J. Shaw for Respondent and Real Party in Interest.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, as Amici Curiae on behalf of Respondent.

Wilson, Jones, Morton & Lynch and Ernest A. Wilson as Amici Curiae on behalf of Respondent in Nos. 29706 and 29707.

## OPINION

**SULLIVAN, J.**—These four cases, considered together because of their related factual setting, present a single legal issue: whether former article XI, section 18, now article XIII, section 40 of the California Constitution (see *Westbrook* v. *Mihaly, ante,* pp. 765, 772, fn. 1 [87 Cal.Rptr. 839, 471 P.2d 487] fn. 1, for an explanation of the renumbering of the constitutional provision here involved and of our reasons for our reference thereto under its former

numbering) and section 21754 of the Education Code, insofar as they require a greater than majority vote to approve the issuance of school district general obligation bonds, violate the equal protection clause of the Fourteenth Amendment to the United States Constitution. Article XI, section 18 provides, in relevant part, as follows: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, . . ." Education Code section 21754 provides: "If it appears from the certificate of election results that two-thirds of the votes cast on the proposition of issuing bonds of the district are in favor of issuing the bonds, the governing board of the school district shall cause an entry of that fact to be made upon its minutes. The governing board shall then certify to the board of supervisors over the county whose superintendent of schools has jurisdiction of the district, all proceedings had in the premises. The county superintendent of schools shall send a copy of the certificate of election results to the board of supervisors of the county."

Petioners in L.A. 29706 are the Alhambra City School District of Los Angeles,[1] the Board of Supervisors of Los Angeles County, and Robert O'Neil. Petitioner O'Neil is a registered voter and taxpayer in the district and a parent of a child attending a district school. At an election held in September 1968, he voted in favor of a proposition which sought authorization for the district to incur a bonded indebtedness in the amount of $10,900,000 in order to expand and improve school facilities.[2] Those voting in favor of the proposition constituted 66.24 percent of the total votes cast, a substantial majority but less than the two-thirds required by section 18.[3]

Petitioner in L.A. 29707 are the Alhambra City High School District,[4] the Board of Supervisors of Los Angeles County, and Betty Rowlett. Petitioner

[1]The governing board of the district is the Alhambra City Board of Education. Pursuant to section 1002 of the California Education Code, the board has prosecuted this action in the name of the district.

[2]Petitioners claim that there are pressing needs within the district to which the proceeds of the bonds were to be applied. A resolution adopted by the district's board of education, discussed *infra*, recites that "critical school housing conditions exist within the district and double sessions have been established in eight elementary schools."

[3]As do the individual petitioners in L.A. 29707, L.A. 29708 and L.A. 29709, petitioner O'Neil alleges that he brings this petition "on his own behalf and on behalf of all other electors who voted in favor of said Bond Proposition at said Election."

[4]The Alhambra City School District and the Alhambra City High School District are legally separate school districts governed by the same governing board, the Alhambra City Board of Education. The Alhambra City School District is one of the "component" elementary school districts of the Alhambra City High School District.

Rowlett is a registered voter and taxpayer in the district and the parent of a pupil at a district school. At the election mentioned above, she voted in favor of a separate proposition which sought voter authorization for the district to incur a bonded indebtedness of $10,468,000 in order to provide expanded and improved school facilities. The votes in favor of the proposition constituted a majority (64.93 percent) but less than the constitutionally required two-thirds.

Petitioners in L.A. 29708 are the Pasadena Unified School District of Los Angeles County, the Board of Supervisors of Los Angeles County, and John Cushman. Petitioner Cushman is a voter and taxpayer in the district and the parent of two children attending district schools. He voted in favor of a proposition, submitted to the voters at an election in April 1969, which sought approval of a proposal to incur $34,080,000 in bonded indebtedness for large scale improvements to district school facilities.[5] A majority (50.6 percent) but less than two-thirds voted in favor of the proposition.

Petitioners in L.A. 29709 are the Rosemead School District of Los Angeles County, the Los Angeles County Board of Supervisors and Corin Childs. Petitioner Childs is a voter and taxpayer in the district who voted in favor of a bond proposition submitted to the voters of the district at an election in February 1969. The proposition, which sought authorization for the district to incur bonded indebtedness in the amount of $1,854,000 for school improvement purposes received the approval of 59.55 percent of those voting.

Respondents are James Mize, the executive officer-clerk of the petitioner Board of Supervisors of Los Angeles County (who is named as respondent in each proceeding) and Ralph R. Rule, a registered voter and taxpayer in Pasadena Unified School District. Mr. Rule voted against the bond proposition at the April 1969 election. He is named as "real party in interest" in L.A. 29708 only, but is referred to herein as "respondent."

Despite the fact that none of the propositions described above received the two-thirds affirmative vote required by article XI, section 18 and by section 21754 of the Education Code, the governing board of each district adopted a resolution calling on the Los Angeles County Board of Supervisors to sell the total amount of bonds for which the propositions had sought approval

---

[5]According to a resolution adopted by the district's governing board calling on the county board of supervisors to sell the bonds, the proceeds were to be applied to the following purposes: "(1) Alleviate racial imbalance by providing new school facilities which would be integrated, by creating Elementary Curriculum Area Centers for integrated activities, and by integrating all secondary schools; (2) Relieve overcrowding by providing the needed classrooms; (3) Reduce class size by building the needed additional classrooms to affect [sic] a lower pupil-teacher ratio; (4) Construct libraries and resource centers. . . ."

(see Ed. Code, 21800). Upon receipt of these resolutions, the board of supervisors adopted an order directing that the bonds "be issued and sold for the purpose for which [they] were voted," and instructing respondent Mize to secure publication of a "Notice Inviting Bids" offering the bonds for sale. (Ed. Code, § 21811.)

Mize, however, refused to comply on the ground that publication of the notices would constitute an unlawful expenditure of public funds since the bonds, if issued, would be invalid. His position, in this regard, was based upon the failure of each proposition to receive the two-thirds affirmative vote required by section 18.

Petitioners thereupon initiated these proceedings, invoking our original jurisdiction under article VI, section 10 of the California Constitution. Petitioners contend that insofar as they require a two-thirds rather than a simple majority vote to authorize the issuance of school district general obligation bonds, article XI, section 18 and Education Code section 21754 are unconstitutional. Petitioners seek: (1) a declaration that those bonds which received a majority affirmative vote have been duly authorized for sale by the district voters; and (2) a peremptory writ of mandate commanding respondent Mize to publish the Notice Inviting Bids as directed by the Los Angeles County Board of Supervisors.

We issued alternative writs of mandate to which respondents have made return by demurrer and answer. In granting those writs we have necessarily determined that each case is a proper one for the exercise of our original jurisdiction (see Cal. Rules of Court, rule 56(a)) and that petitioners have no adequate remedy in the ordinary course of law. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593]; *Corona etc. Hospital Dist.* v. *Superior Court* (1964) 61 Cal.2d 846, 850 [40 Cal.Rptr. 745, 395 P.2d 817].)

Petitioners' position may be summarized as follows: the two-thirds requirement, by according some votes greater effect than others, dilutes the voting power of affirmative voters. This dilution contravenes the "one man, one vote" principle established in the reapportionment cases and must be shown to be necessary to achieve a compelling state interest. Under modern conditions no such interest exists and the two-thirds requirement therefore violates the equal protection clause.[6]

---

[6]Petitioners herein make an additional argument attacking the constitutionality of section 18. They claim that the distinction between counties, cities and school districts (to which the constitutional two-thirds requirement applies) and other local governmental bodies such as special districts (to which it does not) is arbitrary and therefore a denial of equal protection to the voters in the former. This is a makeweight argument, supported by no authority, which we need not and do not reach.

Respondents observe that the reapportionment cases are factually distinguishable and urge that they be confined to their facts. They deny that the applicable standard of review requires a showing that a two-thirds vote is necessary to achieve a compelling state interest but argue that, assuming it is, the test is met.

In *Westbrook* v. *Mihaly, supra, ante,* p. 765, filed this day, we hold that those portions of the constitutional provision engaging our attention (i.e., former art. XI, § 18, now renumbered as art. XIII, § 40), Government Code section 43614, and Education Code section 21754 which require that general obligation bond proposals of counties, cities and school districts be approved by a two-thirds majority of the voters in a popular referendum violate the equal protection clause of the Fourteenth Amendment to the United States Constitution. We further hold that our decision be given prospective effect only and that, accordingly, affirmative relief be denied. The issues involved herein are identical to those resolved in *Westbrook* and our decision there is, therefore, fully dispositive of the instant cases.

In each of the foregoing cases (L.A. 29706, L.A. 29707, L.A. 29708 and L.A. 29709), the alternative writ of mandate is discharged and the petition for a peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., and Schauer, J.,* concurred.

**MOSK, J.**—I concur in the conclusion that the two-thirds majority requirement violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, but I dissent from the denial of relief to these petitioners, for the reasons discussed in my concurring and dissenting opinion in *Westbrook* v. *Mihaly, ante,* p. 765 [87 Cal.Rptr. 839, 471 P.2d 487].

The prevailing rationale in *Westbrook* that the elections are now forgotten is particularly inapposite in these cases. Here, after the majority—but not two-thirds—vote in the elections, the governing board of each district adopted a resolution calling upon the county board of supervisors to sell the bonds for which the propositions had sought approval, and the board acquiesced. Again, as in *Westbrook,* the majority of the court tell the several boards that their interpretation of the law was correct and we adopt

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

their conclusion. And again, inexplicably, the court denies affirmative relief. This result is impossible to rationalize.

I would issue the peremptory writ of mandate. Mr. Justice Peters has authorized me to say he would also issue the writ.