[L.A. No. 29879. In Bank. Aug. 19, 1971.]

EDMUND G. BROWN, JR., as Secretary of State, etc., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; CALIFORNIANS AGAINST THE STREET AND ROAD TAX TRAP et al., Real Parties in Interest.

510

512

**COUNSEL**

Edmund G. Brown, Jr., Daniel H. Lowenstein, W. N. Davis, Jr., Marvin S. Shapiro and Charles H. Phillips for Petitioner.

Thomas H. Crawford, Barbara Ashley Phillips, Roland Brandel and Richard G. Hildreth as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Thorpe, Sullivan, Clinnin & Workman and Vincent W. Thorpe for Real Parties in Interest.

**OPINION**

**WRIGHT, C. J.**—On application of Edmund G. Brown, Jr., as Secretary of State, we issued an alternative writ of mandate directing the respondent Superior Court of Los Angeles County to vacate or show cause why it should not vacate its orders sustaining a demurrer and dismissing an action seeking the imposition of civil penalties on the real parties in interest for their alleged failure to comply with certain election campaign laws. We have concluded that the first amended complaint filed in the basic action states a proper cause against the particular demurrer and that the peremptory writ should issue.

It is alleged that defendants[1] violated certain provisions of the Elections Code requiring that an "association" disclose the names of contributors and the amount contributed by each, and the names of distributees and the amount distributed to each, in connection with the association's support

---

[1]Defendants in the basic action, the real parties in interest in this mandamus proceeding, are three oil companies, two unincorporated associations and three individuals. They will hereinafter be collectively referred to as defendants. Although they individually played slightly different roles in the alleged violations, it is not necessary that we examine individually their precise conduct or courses of conduct. It is sufficient for our present purposes that the demurrer conditionally concedes allegations that each defendant took action or failed to take required action which constituted a violation of statutory provisions requiring the disclosure of particular information.

of or opposition to ballot measures.[2] These violations were alleged to have occurred during the November 1970 statewide elections in relation to Proposition 18, which failed to obtain the necessary majority of votes for adoption. In the words of the complaint, Proposition 18 would have authorized "the use of a percentage of revenue derived from motor fuel tax and license fees for control of environmental pollution caused by motor vehicles, and for public transportation including mass transit systems, upon approval of the electorate in the area affected." Defendants were opposed to Proposition 18 and, it is alleged, collected funds for the "payment of expenses in a campaign to influence the action of the voters against the adoption of" the proposition. Civil penalties for the alleged failure to make the required disclosures are provided for pursuant to Elections Code section 11890.[3]

Some of the defendants other than the three oil companies jointly interposed a demurrer on the ground that the disclosure statute was unconstitutional on its face. The trial court's order sustaining the demurrer provided: "Demurrer sustained without leave to amend, on the ground that there is

[2]The provisions alleged to have been violated are found in Elections Code, division 8, chapter 2, including the following:

Section 11800 defines a "measure" as here pertinent, as "any constitutional amendment or other proposition submitted to a popular vote at any election. . . ."

Section 11801 defines an "association" as "any person, committee, firm, association, public or private corporation, or other group of persons, whether incorporated or not, that for the payment of expenses in a campaign to influence the action of voters for or against the circulation or adoption of any measure voted upon at a statewide, county, district or municipal election does either or both of the following:

"(a) Collects, raises, or receives money or promises of money aggregating from all sources more than one thousand dollars ($1,000).

"(b) Expends more than one thousand dollars ($1,000) of its own money or funds."

Section 11830 requires that not more than 45 days nor less than 40 days prior to an election "every association shall file a statement of receipts and expenses." Other provisions provide for the filing of supplemental and final statements. (Elec. Code, §§ 11833, 11834.)

Section 11832 provides for the contents of the statement. It requires, among other things, the disclosure of the names and addresses of anyone making contributions to the association of money or its equivalent aggregating in value 25 or more dollars and the amounts of such contributions, the total of contributions of less than 25 dollars, the total sum contributed to the association, the names and addresses of persons or entities to whom or which the association has disbursed money or its equivalent having a value of 10 or more dollars and the amounts of such disbursements, the total of all contributions of less than 10 dollars by the association, and the total sum contributed by the association.

Other sections of the Elections Code define "expenses" (§ 11802), provide for the form and manner of filing statements in the office of the Secretary of State (§ 11831), and the distribution of copies by the Secretary of State (§ 11860).

[3]As here relevant section 11890 provides: "In addition to any other penalty prescribed, each association . . . that violates any provision of this chapter is liable to a penalty of one thousand dollars ($1,000) to be recovered in a civil action brought by any citizen of the State."

an invidious discrimination against those campaigning for and against propositions and is therefore unconstitutional; treating such proponents and opponents of *propositions* differently than-those opposing or favoring *candidates* is discriminatory in the light of the Constitution." (Italics added.) Demurrers on other grounds interposed by the three oil company defendants were taken off calendar, and the order of dismissal was thereupon entered.

Brief mention should be made of threshold issues going to petitioner's standing and the propriety of the remedy. Plaintiff in the basic action in its current posture is Edmund G. Brown, Jr., a "citizen of the State of California." He seeks a determination of penalties in such capacity after an earlier demurrer was sustained by respondent court on the ground that he was not a proper party plaintiff in initially bringing the action in his capacity as Secretary of State.[4] As plaintiff citizen in the basic action he has a remedy by way of appeal from the order of dismissal. He seeks, instead, by his collateral attack in his capacity as Secretary of State, a writ of mandate compelling the respondent court (1) to vacate orders sustaining the demurrer and dismissing the action, and (2) to assume jurisdiction and proceed with the action.

If mandamus is a proper remedy, and assuming that as Secretary of State in these proceedings petitioner is a stranger to the basic action, he nevertheless appears to be a "party beneficially interested" (Code Civ. Proc., § 1086) upon whose petition mandate could issue. (See *Hollman* v. *Warren* (1948) 32 Cal.2d 351, 356-357 [196 P.2d 562]; *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627].) His beneficial interest is amply demonstrated by a showing that he bears overall responsibility for administering the disclosure laws the constitutionality of which is now challenged. The uncertainty engendered by the respondent court's order of dismissal requires final resolution in order that the Secretary of State may be properly and fully informed with respect to these public responsibilities.

It further appears that mandate is the proper remedy in these circumstances. By declaring the disclosure statute unconstitutional the respondent court has refused to assume jurisdiction over the basic action to extract civil penalties (see *In re Berry* (1968) 68 Cal.2d 137, 145-146 [65 Cal.Rptr. 273, 436 P.2d 273]), and mandate should issue to compel

---

[4]We do not undertake a determination whether the trial court properly concluded that language in Elections Code section 11890 authorizing the bringing of an action for the imposition of penalties "by any citizen of the State," was intended to exclude elected public officials as plaintiffs.

a determination on the merits (*Robinson* v. *Superior Court* (1950) 35 Cal.2d 379, 383-384 [218 P.2d 10]; *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 773 [197 P.2d 739]) where the remedy by appeal is inadequate. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal. Rptr. 609, 428 P.2d 593].) Appended to the petition are several declarations and exhibits by which it is made to appear that the public interest requires a more rapid determination of the constitutionality of the disclosure statute than can be provided in the normal course of appellate review. At least two statewide initiative measures and scores of local ballot measures, many of which are of a controversial nature and will involve substantial campaign expenditures, will be submitted to the voters during the remainder of the current year. In the absence of a speedy final determination of the viability of disclosure laws, both proponents and opponents of the measures will be forced to respond or not respond to legislative direction at their own risk. The Secretary of State has prepared but because of this uncertainty not forwarded instructions to proponents of statewide initiative, referendum and recall petitions relating to their responsibilities under the disclosure laws. The public welfare thus requires an early resolution which can be achieved only by mandamus in the interest of orderly compliance with and administration of the particular laws. ■ The issue of the absence of an adequate remedy in the ordinary course of law has, moreover, already been determined by the granting of the alternative writ. (*County of Sacramento* v. *Hickman, supra,* 66 Cal.2d 841, 845; *Corona etc. Hosp. Dist.* v. *Superior Court* (1964) 61 Cal.2d 846, 850 [40 Cal.Rptr. 745, 395 P.2d 817].)

The substantive ground urged in support of the claims of unconstitutionality of the particular disclosure statutes (fn. 2, *supra*) is, according to defendants, an invalid legislative classification which treats persons or associations who support or oppose candidates for public office differently from persons or associations who support or oppose ballot measures.[5] In either case such persons and associations are required to make disclosure statements which are filed with the Secretary of State or other public official. But, it is claimed, the statements required of persons supporting or opposing ballot measures are so significantly more onerous as to constitute an invidious discrimination rendering those laws unconstitutional under Fourteenth Amendment equal protection prohibitions. Defendants concede the propriety and even the desirability of disclosure requirements in the case of

[5]No claim is made herein that there is an invalid discrimination between those who support as against those who oppose ballot measures, or between those who support different candidates in the same election. The claim is that those who support and oppose ballot measures as a group are similarly situated with those who support candidates as a group, and should be subjected to the same regulations or regulations having substantially the same impact.

both candidates and election ballot measures and are not opposed to requirements which would be as onerous in one case as in the other.

The disclosure provisions affecting candidates for public office are set forth in Elections Code, division 8, chapter 1 (§ 11500 et seq.). Such provisions require, generally, the filing of campaign statements by candidates for public offices and by the treasurers of committees organized for the purpose of conducting the election campaign of any candidate or political party. In the broad sense, the provisions require a showing of contributions to and expenses paid by any candidate or committee.[6] In addition to the Elections Code requirements, Government Code section 3750 further requires the filing of statements by candidates and their supporting political committees listing contributions in excess of $500 with the names of the contributors.

Defendants particularly complain of certain differences in disclosure requirements which are claimed to impose a greater burden on proponents and opponents of ballot measures as compared to candidates and the treasurers of their political committees. Some of these differences are hereinafter set forth.

1. *There is a lesser requirement for itemization of contributions in the case of candidate elections.*

In the case of ballot measures, there are no itemization requirements where the total contributions are not more than $1,000 (Elec. Code, §§ 11801, subd. (a), 11830), and in the event the total exceeds $1,000 only those contributions of $25 or more need be itemized. In the case of candidates, contributions in excess of $500 are required to be itemized (Gov.

---

[6]Particularly pertinent to the present inquiry, section 11503 provides:

" 'Campaign statement' means an itemized statement prepared in duplicate by a candidate and by the treasurer of a committee showing under each of the subdivisions of Section 11504:

"(a) In detail all moneys paid, loaned, contributed, or otherwise furnished, directly or indirectly, to the candidate or treasurer or for use of the candidate or treasurer, in aid of the candidate's nomination or election.

"(b) All money contributed, loaned, or expended, directly or indirectly, by the candidate or treasurer or through any other person, in aid of the candidate's nomination or election.

"(c) The names of all persons who paid, loaned, contributed, or otherwise furnished such money in aid of the candidate's nomination or election.

"(d) The names of all persons to whom such money was contributed, loaned or paid.

"(e) The specific nature of each item.

"(f) The service performed and by whom any services were performed.

"(g) The purpose for which the money was expended, contributed or loaned."

Code, § 3750) and it is expressly provided that all contributions whatever the amount be set out "in detail" on an "itemized statement" for each of 15 different categories. (Elec. Code, § § 11503, 11504.)

On the face of the statutory provisions, the foregoing itemization requirements appear to be *less* onerous in the case of ballot measures than in the case of candidate elections, contrary to defendants' contention. However, the "in detail" itemization provision of the statute relating to candidate elections has been held not to require the same degree of itemization as in the case of ballot measure elections. In *Warden* v. *Brown* (1960) 185 Cal.App.2d 626 [8 Cal.Rptr. 518], it was held that a construction of the candidate election statute precluded reading into the law by implication any "specific requirement" which would compel a candidate to provide a statement of the amount furnished by each contributor. (See also 32 Ops. Cal.Atty.Gen. (1958) 88, 91-92.) Petitioner has urged that we disapprove the holding in *Warden*. No reason appears why we should take exception to either the holding in that case or the construction of the pertinent disclosure requirements in the case of candidate elections as announced in the cited opinion of the Attorney General. The desirability of a fuller disclosure in the case of candidate elections as urged by petitioner and not opposed in principle by defendants, is clearly a legislative matter.

It thus appears that there are different itemization requirements relating to contributions, although it is doubtful that the total burden imposed on those who must make the itemization disclosures is significantly more onerous in the one case than in the other.

2. *The addresses of the contributors must be listed in the case of ballot measures but not in the case of candidates.*

Candidate statements must list the names of all persons who have "contributed" (Elec. Code, § 11503, subd. (d)), while ballot measure statements must list names *and addresses* but only of those persons who have contributed $25 or more. (Elec. Code, § 11832.) Concededly, the requirements are different in that the addresses of listed contributors must be given only in the case of ballot measures but, unlike the candidate elections, not even the names are required to be listed where the contributions are less than $25.

3. *The recipients of expenditures must be listed and their names and addresses given in the case of ballot measure statements but not in the case of candidate statements.*

As to candidates, the statement must itemize, in the case of expenditures, the names of the recipients, the "specific nature" of each item, the service

performed and by whom and the purpose for which the expenditure was made. (Elec. Code, § 11503, subds. (d), (e), (f) and (g).) Presumably, on a construction of the statute parallel to that employed in *Warden,* a listing of the names of the persons to whom expenditures were disbursed on behalf of candidates need not include the amount distributed to each named person, but those making the disclosure statement must nevertheless additionally list the names of persons who actually performed services together with a description of the services each performed in each of 15 different categories. This required itemization of services performed frequently might well provide the identical information as would an itemization of expenditures made.

Ballot measure statements must disclose the names *and addresses* of persons and entities who or which are the recipients of disbursements of 10 or more dollars. (Elec. Code, § 11832.) Although this itemization further requires a listing of addresses not required in the case of candidate elections, there are no requirements for listing even the names of recipients, as in the case of candidate elections, for expenditures of less than $10.

From the foregoing it is apparent that as with contributions, there are different itemization requirements relative to expenditures for candidates on the one hand and ballot measures on the other, but it cannot be said that the burdens imposed on those who must make the disclosures are significantly more onerous in the one case than in the other.

4. *In the case of candidate elections the single report which is required to be filed pursuant to provisions of the Elections Code need not be filed until a month after the election, whereas other provisions of that code require a total of four reports to be filed before and after the election in the case of ballot measures. Government Code provisions may require additional filings in the case of candidate measures.*

Disclosure statements are required of both a candidate and the treasurer of his political committee "within 35 days after the election or primary, or not later than the day preceding the day upon which the candidate takes office, whichever first occurs." (Elec. Code, § 11563.) As earlier noted, Government Code section 3750 additionally provides for the filing of candidate disclosure statements in particular instances. It requires that each candidate and each committee supporting such candidate file two cumulative statements naming each person or organization from whom a contribution or contributions have been received that total more than $500 and that have been or may be expended on behalf of such candidate's campaign. One of such statements must be filed between 20 and 25 days prior to the election. The second must be filed between 30 and 35 days after the election

(Gov. Code, § 3751), although it may be combined with the post-election campaign statement required by the Elections Code (Gov. Code, § 3752).

Disclosure statements in the case of ballot measures are required to be filed not later than 35 days after qualification of a measure (Elec. Code, § 11829), not more than 45 nor less than 40 days prior to the election (Elec. Code, § 11830), not more than 12 nor less than 7 days prior to the election (Elec. Code, § 11833), and within 30 days after the election (Elec. Code, § 11834).

From the foregoing it is obvious that the total number of reports which must be filed in behalf of a candidate for public office will vary according to his arrangements for and the number of his political committees, the amounts of contributions received for campaign expenditures, and whether the candidate or his committee options to file combined statements where individual contributions exceed $500. As candidate statements must be filed for *both* primary and general elections by *both* the candidate and his committees or officers of his committees, the total number may exceed the four filings claimed to be required in the case of ballot measures. It thus appears that although the provisions which require multiple filings in the case of ballot measures are different than those which require filings in the case of candidates, it cannot be said with certainty that the obligation in the one instance is more burdensome than in the other.

*5. The statement must be verified when made in connection with a general election only in the case of ballot measures.*

In the case of candidate elections only primary election statements are required to be verified, and in the case of ballot measure elections only general election statements are required to be verified. Ballot measures normally do not appear on a primary election but in each case there is but one election at which verified statements are required.

*6. Only those persons required to submit ballot measure statements are subject to a civil penalty of $1,000 per offense.*

A violation of the disclosure laws required by the Elections Code in either case constitutes a misdemeanor. (Elec. Code, §§ 11624, 12053, 12055.) A violation of Government Code section 3750, providing for the disclosure of candidate contributions in excess of $500, may constitute either a misdemeanor or a felony (Gov. Code, § 3754), and any person who falsely verifies a disclosure statement is guilty of perjury and exposes himself to a possible felony conviction (Pen. Code, §§ 118, 118a, 126). Moreover, the only civil liability provided is in connection with ballot measures. (Elec. Code, § 11890.)

It is manifest from the foregoing exposition that there are overall differences in disclosure requirements and penalties in the case of candidates on the one hand and ballot measures on the other. Defendants, ballot measure opponents, principally complain of a greater burden in identifying contributors and the amounts of individual contributions, in identifying distributees and the amounts of individual receipts, in the number of and times at which statements must be made, and in the exposure to penalties for noncompliance.

■ Statutory differences which require a greater measure of disclosure of financial information relative to a ballot measure election than in the case of a candidate election are not legally significant on considerations of equal protection unless in totality there is a resulting invidious discrimination against those required to make the ballot measure disclosures. (See *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483 [99 L.Ed. 563, 75 S.Ct. 461]; *Day Brite Lighting, Inc.* v. *Missouri* (1952) 342 U.S. 421 [96 L.Ed. 469, 72 S.Ct. 405]; *Otsuka* v. *Hite* (1966) 64 Cal.2d 596 [51 Cal.Rptr. 284, 414 P.2d 412].) ■ "[T]he burden of establishing the unconstitutionality of a statute rests on him who assails it, and . . . courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." (*Metropolitan Casualty Ins. Co.* v. *Brownell* (1935) 294 U.S. 580, 584 [79 L.Ed. 1070, 1072-1073, 55 S.Ct. 538].)

Whatever their nature and substance, the differences in the pertinent financial disclosure laws arise, in large part, out of their differing legislative histories. The first financial disclosure law was enacted as a part of other election regulatory provisions in 1893. (Stats. 1893, ch. XVI, pp. 12-16, §§ 1-5.) It related only to candidate elections as, at that time, there was no constitutional provision for initiative and referendum measures. (Cal. Const., art. IV, § 1.) In 1921, 10 years after the Constitution was amended to provide for the initiative and referendum, the first disclosure provisions governing election campaigns for and against ballot measures were enacted. The following year a special committee of the Senate was appointed to investigate matters relating to the receipt and expenditure of sums of money in excess of $1,000 to secure the passage or defeat of measures appearing on the ballot at the general election in November 1922. It examined and found deficient the disclosure provisions

which related to ballot measures. (See Report of Special Committee, Sen. Daily J., p. 1780 et seq., May 14, 1923.)

The report of the special committee contained a study of seven such measures, and the committee concluded that in each instance particular financial interests were able to exert sufficient influence to be determinative. The "outstanding features" disclosed by the committee's investigations were "[s]tartlingly large" campaign expenditures, and campaign "methods and practices that constitute a menace to our electoral system." Practices which were particularly found to have the effect of "misleading and deceiving the voter" where the use of "high sounding, patriotic names under which the real identity of the interested parties and actual proponents or opponents is disguised," the undercover employment as campaign workers of commercial, labor, social, and other leaders who occupied positions from which they might be able to influence large groups of persons who were unaware of the employment, and the commitment of some campaign workers to lend support both for and against particular propositions.

The special committee concluded that the "danger is not in the amount that may be spent, but withholding from the voters the knowledge that it is being spent and by whom and through what channels. The voter can be depended on to properly discount propaganda and to appraise, at its real value, hired opinion if he can only know that it is hired and have the means of distinguishing the disinterested civic worker, lodge member or club leader from the one under political employment." The committee recommended more thorough disclosure requirements in order to cure what it deemed to be evils of ballot measure elections. The recommendations were adopted by the Legislature through amendments in 1923 (Stats. 1923, ch. 391, p. 487 et seq.), and these provisions have remained substantially the same since that time.

It is of no consequence that the disclosure provisions for ballot measure elections were enacted at different times and under different circumstances from those required in the case of candidate elections. ■ The Legislature may rationally enact reform measures "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." (*Williamson* v. *Lee Optical Co., supra,* 348 U.S. 483, 489 [99 L.Ed. 563, 573].) The crux of the question is whether it has acted rationally. ■ Consistent with the concerns expressed by the special committee there are many sound reasons for according different treatment to ballot measure elections to overcome evils which can be cured, in part at least, by more stringent financial disclosure requirements although we do not concede that the requirements are more severe in one case than in the other.

It is common knowledge that in the majority of cases a candidate for public office has been nominated or endorsed by a political party, the policies of which are widely known. Voters may become aware of the candidate's qualifications, in part, through their long-standing knowledge of the candidate's party and of politically oriented personalities who endorse the candidate. A ballot measure, on the other hand, is presented to voters without a historical background of established political support, and voters are unable to make the same quality judgment without knowledge of established persons or entities who or which are the real advocates or opponents of the measure.

Essential to any fairly presented election issue is the public discourse for and against the candidate or measure. The political party system in candidate elections is some assurance that the issues and the candidate's views on the same will be fully exposed. But in the case of a ballot measure there is little assurance that the issues will be exposed should particular advocates or opponents be so under-financed that they are unable to meet the challenge of their well-financed adversaries. The disclosure of financial contribution information prior to the election concerning those favoring and those opposing the measure rationally and significantly affect voter evaluation of the proposal.

A candidate represents a personality who hopefully attempts to persuade voters to support him as the result of virtues which he exposes to the public view. A ballot measure is devoid of personality and voters who seek to judge the merits of issues by reliance on the personality of those supporting different points of view can do so only if they are made aware, prior to election, of those who are the real advocates for or against the measure.

Voters who may well be able to understand and judge candidates may not always be able to comprehend and determine the merits of ballot measures which frequently are cast in language, the precise meaning of which often is confusing and perhaps on occasion intentionally so. (See dissenting opinion of White, J., in *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529 [50 Cal.Rptr. 881, 413 P.2d 825], relative to different meanings which might be accorded to a ballot measure.) A voter may reasonably seek to judge the precise effect of a measure by knowledge of those who advocate or oppose its adoption, and he may gain such knowledge only through pre-election disclosure requirements of the nature here involved.

The foregoing and other rational grounds for imposing somewhat varying financial disclosure requirements on those advocating points of view on ballot measures as distinguished from candidates, were legitimate considerations for the Legislature in enacting the challenged provisions,

particularly in view of the report of the special committee in 1923. The matters of which defendants particularly complain are all pertinent to the elimination of the evils which threaten the electoral system through an uninformed electorate faced with ballot measure propositions. Thus, the Legislature may well provide for a greater identity of proponents and opponents, including addresses, and the amounts of individual contributions to or receipts from campaign funds, in order to insure that voters are aware of those persons who advocate or oppose a particular measure and the nature and the extent of their involvement. It is obvious, too, that this information must be available to the voter during the campaign and before the election if he is to utilize it in the formation of his decision.

It follows that the requirement of earlier and more frequent disclosures is entirely reasonable. The imposition of verification requirements and civil penalties for failures to make required disclosures provide greater assurance that accurate and timely disclosures will be made in the interest of greater voter awareness of matters rationally bearing on an informed exercise of the franchise. Contrary to defendants' contention, the differences in disclosure requirements of which they complain thus bear a close relationship to the purposes and objectives sought to be achieved by the ballot measure provisions. (Cf. *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 721 [94 Cal.Rptr. 602, 484 P.2d 578]; *Parr* v. *Municipal Court* (1971) 3 Cal.3d 861, 863-864 [92 Cal.Rptr. 153, 479 P.2d 353]; *In re Antazo* (1970) 3 Cal.3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999].)

It is noted that an invidious discrimination is more likely to be found in those instances where some fundamental right is impermissibly restricted or threatened to be restricted as, for instance, the right to vote. (See *Reynolds* v. *Sims* (1964) 377 U.S. 533, 561-562 [12 L.Ed.2d 506, 526-528, 84 S.Ct. 1362]; *Castro* v. *State of California* (1970) 2 Cal.3d 223, 235 [85 Cal.Rptr. 20, 466 P.2d 244].) In order to justify such legislation it must be determined that the restriction complained of is "necessary to promote a compelling state interest." (*Kramer* v. *Union School District* (1969) 395 U.S. 621, 626-627 [23 L.Ed.2d 583, 588-590, 89 S.Ct. 1886].) In the instant case, however, the challenged legislation is not designed to restrict, but rather to promote an intelligent exercise of the franchise. (See *Canon* v. *Justice Court* (1964) 61 Cal.2d 446, 451-454, 459-460 [39 Cal.Rptr. 228, 393 P.2d 428].) Even assuming arguendo that a fundamental right is here somewhat limited, there is a compelling state interest being served which would justify such limitation. In *Canon, supra,* Elections Code section 12047, which required a disclosure of persons who distributed circulars attacking candidates for public office, was challenged on First Amendment grounds. Relevant to the issues in the instant case, it is stated in *Canon:* "The purpose of the statute is clear.

It requires identification so that (1) the electorate may be better able to evaluate campaign material by examination of the competence and credibility of its source, (2) irresponsible attacks will be deterred, (3) candidates may be better able to refute or rebut charges—so that elections will be the expression of the will of an undeceived, well-informed public. It is clear that the integrity of elections, essential to the very preservation of a free society, is a matter 'in which the State may have a compelling regulatory concern.' " (61 Cal.2d at pp. 452-453.)[7] The manifest purpose of the financial disclosure requirements to insure a better informed electorate likewise promotes a compelling state interest.

Defendants have failed to demonstrate wherein the differing disclosure requirements in the case of ballot measure and candidate elections are of any real substance or, in any event, constitute an invidious discrimination against those who must make and file the ballot measure statements. If significant distinctions do exist, they are justified by the greater disclosure needs in the case of ballot measures. These needs are clearly established by a consideration of the circumstances under which ballot measures are presented to the electorate, resulting in its failure to obtain information which is objective and untainted. The report of the special committee establishes that the Legislature's enactment of the challenged laws is rationally designed to correct the evils it found to exist. (See *Canon v. Justice Court, supra,* 61 Cal.2d 446.) It thus infringes neither the equal protection clause of the Fourteenth Amendment nor article I, sections 11 and 21, of our Constitution. (See *Dept. of Mental Hygiene* v. *Kirchner* (1965) 62 Cal.2d 586, 588 [43 Cal.Rptr. 329, 400 P.2d 321].)

Let a peremptory writ of mandate issue directing the respondent court to vacate its orders dismissing the action and sustaining the demurrer, to overrule the demurrer and to permit defendants reasonable time to answer or otherwise plead.

McComb, J., Peters, J., Mosk, J., Sullivan, J., Schauer, J.,* and Devine, J.,† concurred.

---

[7]Section 12047, although held not to infringe free speech guarantees, was struck down on other unrelated grounds. It was subsequently reenacted to conform to the views expressed in *Canon.*

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.