[No. A019811. First Dist., Div. One. May 22, 1985.]

THIRTEEN COMMITTEE et al., Plaintiffs and Appellants, v.
ILENE WEINREB, Defendant and Appellant.

530

COUNSEL

A. Lee Sanders for Plaintiffs and Appellants.

Robert M. Stern, Barbara A. Milman and Janis Shank McLean as Amici Curiae on behalf of Plaintiffs and Appellants.

Joseph E. Russell, Powell & Russell, Ephraim Margolin and Sandra Coliver for Defendant and Appellant.

OPINION

RACANELLI, P. J.—In this appeal we must decide, inter alia, whether attorney fees incurred and paid by a candidate in a local election in prosecuting a defamation action against an opponent constitute a reportable political expenditure within the meaning of the disclosure requirements imposed under the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.).[1]

FACTS

Ilene Weinreb, then Mayor of the City of Hayward, was a candidate for reelection at the April 11, 1978 election. Shortly before election day, the campaign committee for her chief opponent, Matt Jiminez, Sr., distributed a pamphlet allegedly prepared by Leo and Lonia Howell accusing Weinreb of dishonesty in connection with disclosure of her economic interests. On the day preceeding the election, Weinreb filed a defamation action against Jiminez and the Howells and held a press conference announcing institution of the litigation.[2] Following a public apology by Jiminez and his campaign manager, the suit was dismissed as to them and proceeded to trial against the Howells alone. A judgment of nonsuit was subsequently entered in favor of the Howells.[3]

Thereafter, plaintiffs, the Thirteen Committee and a small group of city taxpayers, filed the underlying action seeking to compel Weinreb to file amended campaign finance statements disclosing attorney fees incurred and paid in connection with the defamation action. The trial court determined that disclosure was required but denied the claim for damages based on its

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code, and references to the Act are to the Political Reform Act of 1974.

[2]Although the record is unclear, Weinreb apparently won reelection.

[3]An appeal from that decision is presently pending before another division of this court.

finding of Weinreb's good faith belief that no disclosure was necessary under the Act. The parties were ordered to bear their respective costs and attorney fees.

Both sides have appealed. The Fair Political Practices Commission (Commission) has appeared as amicus curiae in support of plaintiff Thirteen Committee. For the reasons we explain, we reverse that part of the judgment denying attorney fees but affirm the judgment in all other respects.

## DISCUSSION

### Defendant Weinreb's Appeal
### Campaign Disclosure

■ The manifest purpose of the financial disclosure provisions of the Act is to insure a better informed electorate and to prevent corruption of the political process. (§ 81002; *Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 524 [96 Cal.Rptr. 584, 487 P.2d 1224]; *Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 888 [125 Cal.Rptr. 915].) Under the relevant provisions of the Act, a duty is imposed upon political candidates and campaign committees to file written reports of election expenditures made and contributions received. (§§ 84200, 84211.) An "expenditure" is defined to include "a payment" or an "enforceable promise to make a payment" unless clearly unintended for "political purposes." (§ 82025.)[4]

■ Weinreb first argues that the statutory phrase, "political purposes," is ambiguous and was not intended to embrace expenditures for private litigation. The argument is unconvincing. First, a statute must be upheld if its terms can be made reasonably certain by reference to other definable sources. (*County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 673 [114 Cal.Rptr. 345, 522 P.2d 1345].) "[A]ny ambiguity [in the phrase 'for political purposes'] can be cured through regulation or judicial constructions which draw clear lines for the marginal cases." (*Fair Political Practices Com.* v. *Suitt* (1979) 90 Cal.App.3d 125, 131 [153 Cal.Rptr. 311] [legislative aide's campaign activities constitute a reportable contribution].)

Under the administrative guidelines adopted by the Commission, the statutory term is interpreted to mean "[f]or the purpose of influencing or attempting to influence the action of the voters for or against the nomination or election of a candidate . . . ." (Cal. Admin. Code, tit. 2, § 18225, subd.

---

[4]Section 82025 provides in full: " 'Expenditure' means a payment, a forgiveness of a loan, a payment of a loan by a third party, or an enforceable promise to make a payment, unless it is clear from the surrounding circumstances that it is not made for political purposes. An expenditure is made on the date the payment is made or on the date consideration, if any, is received, whichever is earlier."

(a).) Although the guidelines exempt payments made for personal purposes "unrelated to his candidacy" (Cal. Admin. Code, tit. 2, § 18225, subd. (b)(1)), the Commission has officially interpreted the proviso to include litigation expenses of a candidate seeking to remove an opponent from the ballot as a reportable expenditure noting, in part, that "when expenditures are made during the course of a campaign for litigation designed to protect or vindicate the personal reputation of a candidate, those expenditures generally are made to forward the fortunes of the candidate in the election and should also be reported." (*In re Request of Buchanan* (1979) 5 Ops.Cal.Fair Political Practices Com. 14, 16.) Such official interpretation of governing statutes and regulations is entitled to deference by the courts. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].)

■   Weinreb then argues, contrary to the findings below, that the defamation action was undertaken solely for personal reasons: to defend her personal integrity and reputation. Whether an expenditure is for personal or political purposes is to be determined "from the surrounding circumstances." (§ 82025.) The question is one of fact eluding a rule of universal application and must be decided on a case-by-case basis. (*In re Request of Buchanan, supra,* 5 Ops.Cal.Fair Political Practices Com. 14, 16.) Here, the trial court found that Weinreb instituted the defamation lawsuit to influence voters to favor her candidacy through a forthright denial and repudiation of the charges contained in the campaign pamphlet. Those findings are amply supported by the evidence, including Weinreb's own testimony. In light of the findings that the primary objective of the lawsuit was to vindicate her personal reputation in furthering her quest for the elective office, the trial court's determination that the attorney fees were incurred and expended for a *political* purpose must be upheld.

Weinreb next argues, however, that as a matter of law her legal expenses do not constitute a reportable expenditure. Disclosure of attorney fees paid from her private resources, it is argued, contributes nothing to the statutory objectives of informing the electorate and preventing improper practices. The argument misses the mark. ■   The obvious goal of the required disclosure is to deter possible corruption by exposing the candidate's campaign finances to public view. That a particular expenditure is not improper per se does not negate the public's interest in being apprised of the amount and manner in which the money was spent.

Undaunted, Weinreb next challenges the constitutionality of section 82025 as applied to her. Since no rational reason exists requiring candidate-litigants to reveal publicly their attorney fees while other litigants are permitted to maintain such privacy, the statute, she contends, thus denies equal pro-

tection to candidates and, moreover, invades her right of privacy by compelling disclosure of privileged information. Weinreb makes the correlative argument that the absence of any "relationship" between disclosure and the governmental interests served by the Act mandates that the term "expenditure" be narrowly defined to exclude attorney fees in order to avoid constitutional taint. None of the arguments advanced survive critical analysis.

Conceptually, the only privacy interest at stake is the amount of attorney fees paid in the voluntary institution of suit in a court of record relating to the election process. ■ Reviewing courts have consistently held that the compelling governmental interest in uncovering improper campaign practices justifies the financial disclosure requirements imposed on candidates for election (*Brown v. Superior Court, supra,* 5 Cal.3d 509, 523-524; *Socialist Workers etc. Committee v. Brown, supra,* 53 Cal.App.3d 879, 888-889; cf. *Buckley v. Valeo* (1976) 424 U.S. 1 [46 L.Ed.2d 659, 96 S.Ct. 612] [federal campaign laws]) and, in a parallel context, lobbyists (*Fair Political Practices Com. v. Superior Court* (1979) 25 Cal.3d 33, 46-47 [157 Cal.Rptr. 855, 599 P.2d 46], cert. den. (1980) 444 U.S. 1049 [62 L.Ed.2d 736, 100 S.Ct. 740] [burden of registration, reporting and disclosure of gifts was not substantial interference with exercise of First Amendment rights]; *County of Nevada v. MacMillen, supra,* 11 Cal.3d 662, 675-676 [compelled disclosure of candidate's material economic interests was not invasion of privacy]). Weinreb has not cited, nor have we independently discovered, any authority for the proposition that the payment of attorney fees—particularly by one seeking elective office—is a privileged matter protectable within the traditional zone of privacy. Indeed, the identity of client sources of fees paid to attorney officeholders is *not* privileged unless the disclosure would reveal client confidences. (See *Hays v. Wood* (1979) 25 Cal.3d 772, 783-785 [160 Cal.Rptr. 102, 603 P.2d 19]; see also *Willis v. Superior Court* (1980) 112 Cal.App.3d 277, 290-295 [169 Cal.Rptr. 301] [no attorney-client privilege violation through discovery of fee arrangements in law firm dissolution proceeding]; *Liew v. Breen* (9th Cir. 1981) 640 F.2d 1046, 1049; see generally Annot. (1967) 16 A.L.R.3d 1047.)

Both parties place heavy reliance on the landmark holding in *Buckley v. Valeo, supra,* 424 U.S. 1. In *Buckley,* the Supreme Court confronted constitutional challenges to federal campaign laws dealing primarily with limitations on contributions and expenditures, reporting and disclosure requirements, and public financing of presidential election campaigns. With respect to the disclosure requirements, the court noted that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." (*Id.,* 424 U.S. at p. 64 [46 L.Ed.2d at p. 713].) In concluding that the governmental interests implicated were substantial, the court noted that "disclosure requirements—certainly in most

applications—appear to be the least restrictive means of curbing the evils of campaign ignorance and corruption that Congress found to exist." (*Id.*, at p. 68 [46 L.Ed.2d at pp. 715-716].) Although it found the federal statute impermissibly overbroad as applied to persons other than candidates or political committees because it encompassed the constitutionally protected area of issue discussion, the court upheld the statute (2 U.S.C. § 434(e)) by narrowly construing the term " 'expenditure' . . . to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate [involving] spending that is unambiguously related to the campaign of a particular federal candidate." (424 U.S. at p. 80 [46 L.Ed.2d at p. 722], fn. omitted.)

But as to disclosure requirements imposed on *candidates* and political committees, the court encountered no difficulty in concluding that "Expenditures of candidates and of 'political committees' . . . fall within the core area sought to be addressed by Congress. They are, by definition, campaign related." (424 U.S. at pp. 79-80 [46 L.Ed.2d at p. 722].)

Thus, our understanding of the relevant holding in *Buckley* provides no support for Weinreb's contention; as long as the disclosure is directly related to the campaign of a *candidate,* no constitutional impediment exists.[5] We reiterate that whether the disclosure is related to the candidate's campaign presents a question of *fact.* Here, the trial court's finding—supported by substantial evidence—that Weinreb's lawsuit was brought for purposes of furthering her candidacy, renders the required disclosure of litigation expenses, including attorney fees, constitutionally permissible.

Finally, Weinreb contends that even if legal expenses are reportable, her obligation to disclose would be limited to attorney fees paid *before* rather than *after* the election has occurred. We disagree. The statutory definition of expenditure focuses on the date that payment is made or consideration received, whichever is earlier. (§ 82025.) The trial court found that Weinreb was aware of and contemplated services to be rendered *after* the election. The candidate's obligation to disclose is open-ended: a campaign statement must be filed as long as contributions are received or expenditures are made during the prescribed reporting periods; the duty to disclose is not evanescent upon close of the election. (See §§ 84200, 84204, 84206.)

---

[5]The *Buckley* rule is incorporated in the California administrative regulation in that spending by persons *other than* candidates and political committees is reportable only if used for "communications which expressly advocate the nomination, election or defeat of a clearly identified candidate or candidates or the qualification, passage or defeat of a clearly identified [ballot] measure . . . ." (Cal. Admin. Code, tit. 2, § 18225, subd. (b)(4); see *Fair Political Practices Com.* v. *Suitt, supra,* 90 Cal.App.3d 125, 131, fn. 3.)

Moreover, the lawsuit retained its political purpose even after the election insofar as the attorney fees could be properly characterized as political "expenditures." After Jiminez and his campaign manager were dismissed, the suit was pursued against the Howells alone. The evidence suggests that Weinreb sought to deter the Howells from preparing future "hit pieces" and to protect her reputation against similar attacks in future political contests. Even such subordinate aims bear some reasonable relationship to her *"status as an officeholder"* within the requirement for reportable expenditures. (Cal. Admin. Code, tit. 2, § 18225, italics added.) Additionally, section 82007 broadly defines "candidate" as any person seeking nomination or election whether the specific elective office is known. The trial court found that Weinreb was a candidate; and the evidence established that Weinreb eventually sought another elective term as mayor. Thus, she remained a "candidate" under a duty to report her expenditures, including legal expenses incurred and paid in prosecuting the defamation lawsuit.

*Plaintiffs' Appeal*
*Damages and Attorney Fees*

Under the enforcement provisions of the Act, a civil prosecutor or local resident is authorized to bring an action for damages and injunctive relief. (§§ 91001, 91003-91005, 91009.) In determining the civil sanctions to be imposed, the trial court may consider "[w]hether . . . a violation is inadvertent, negligent or deliberate, and the presence or absence of good faith . . . ." (§ 91001, subd. (c).) And in determining damages "the court may take into account the seriousness of the violation and the degree of culpability of the defendant. . . ." (§ 91009.)

█ In their appeal, plaintiffs first challenge the denial of damages upon the trial court's finding that Weinreb's failure to report the attorney fees was an omission in good faith. Plaintiffs argue that the finding is unsupported by the evidence because "good faith" could only be established if the candidate acted in reliance on advice sought and obtained from the Commission under the authority of section 83114.[6] We disagree.

While good faith reliance on a requested advisory opinion or advice letter will provide a valid defense under the statute, nothing in the Act suggests

---

[6]The statute provides in pertinent part: "(a) . . . No person who acts in good faith on an opinion issued to him by the commission shall be subject to criminal or civil penalties for so acting, provided that the material facts are as stated in the opinion request. . . . [¶] (b) . . . It shall be a complete defense in any enforcement proceeding initiated by the commission, and evidence of good faith conduct in any other civil or criminal proceeding, if the requester, at least 21 working days prior to the alleged violation, requested written advice from the commission in good faith, . . . and committed the acts complained of . . . in reliance on the advice . . . ."

or implies that that is the exclusive method of establishing good faith. (See, e.g., § 81004.5 [amending incorrect or incomplete report as evidence of good faith].) Evidence of the subjective belief of Weinreb and her campaign treasurer (to whom the duty of preparing the finance statements had been delegated) that it was unnecessary to report the attorney fees was properly considered. Contrary to plaintiffs' argument, such evidence was inherently probative of the issue of good faith whether the alleged statutory violation was "inadvertent, negligent or deliberate . . . ." (§ 91001, subd. (c).) Under the circumstances shown, the finding of good faith foreclosing monetary damages was adequately supported and must be accepted on appeal. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

■  However, countervailing policy considerations circumscribe the use of evidence of good faith to deny an award of attorney fees. Under related provisions the court may award the prevailing party in an enforcement action his costs of litigation, including attorney fees. (§§ 91003, subd. (a); 91012.) Herein, the trial court denied plaintiffs' request for attorney fees on the ground that Weinreb had acted in good faith. Plaintiffs and amicus argue, convincingly, that evidence of Weinreb's good faith is irrelevant to an award of attorney fees in an enforcement action of this nature.

Plaintiffs rely on a line of cases interpreting analogous federal statutes where the courts have determined that because private litigation is an important enforcement method, successful plaintiffs are entitled to attorney fees unless special circumstances would render an award unjust. (*Newman v. Piggie Park Enterprises* (1968) 390 U.S. 400, 401-402 [19 L.Ed.2d 1263, 1265-1266, 88 S.Ct. 964] [civil rights act]; *Northcross* v. *Memphis Board of Education* (1973) 412 U.S. 427, 428 [37 L.Ed.2d 48, 50, 93 S.Ct. 2201] [emergency school aid act]; *Filipino Accountants' Assn.* v. *State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1030 [204 Cal.Rptr. 913] [federal civil rights act].) "The award of counsel fees is not intended to punish the defendant in any way. Rather it is to permit and encourage plaintiffs to enforce their civil rights. To declare those rights while simultaneously denying the award of fees would seriously undermine the declared congressional policy." (*Perez* v. *University of Puerto Rico* (1st Cir. 1979) 600 F.2d 1, 2; see also *Milwe* v. *Cavuoto* (2d Cir. 1981) 653 F.2d 80, 83-84.) Accordingly, this court has recently determined that there is no "good faith exception" to an award of attorney fees to the prevailing plaintiff under the private attorney general doctrine or its federal counterpart. (*Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 475-476 [201 Cal.Rptr. 424].)[7]

---

[7]Parenthetically, we find no conflict with the parallel statute permitting consideration of good faith in applying the "remedies and sanctions" of the Act (§ 91001, subd. (c)) since the independently authorized award of attorney fees by definition would not be included within that intended class of relief.

These decisions provide an impressive array of authority in aid of interpretation of a political reform enactment which is similarly dependent upon private litigation as a means of enforcement. Indeed, the declared intent and purpose of the Act acknowledges previous inadequate enforcement measures (§ 81001, subd. (h)) and the need for "[a]dequate enforcement mechanisms . . . [available to] private citizens . . . ." (§ 81002, subd. (g).)

We believe this clear expression of policy encouraging vigorous enforcement through private litigation would be seriously eroded if attorney fees were to be denied to the prevailing party plaintiff in the absence of overriding special circumstances.

As a result of the underlying litigation, plaintiffs were instrumental in rectifying an erroneous political reporting practice to the general benefit of the public. (See *Common Cause* v. *Stirling* (1983) 147 Cal.App.3d 518 [195 Cal.Rptr. 163] [plaintiff's exposure of Brown Act violation was a public benefit].) Since there were no findings that special circumstances existed which might justify denial of attorney fees, plaintiffs were entitled to an award of attorney fees as an included cost of litigation.

That part of the judgment denying attorney fees to plaintiffs is reversed; in all other respects the judgment is affirmed. The matter is remanded for determination of the amount of the fee award both in the action below and on appeal. Plaintiffs shall also recover their costs on appeal.

Elkington, J., and Newsom, J., concurred.

A petition for a rehearing was denied June 21, 1985, and the opinion was modified to read as printed above. The petition of defendant and appellant for review by the Supreme Court was denied August 19, 1985. Grodin, J., did not participate therein.