[No. D002797. Fourth Dist., Div. One. July 23, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER HEDGECOCK FOR MAYOR COMMITTEE et al.,
Defendants and Appellants.

**COUNSEL**

John R. Wertz, Steven G. Amundson, Oliver, Sullivan, Cummins & Wertz, Richard W. Page, Peter L. Garchie, Page, Tucker & Brooks, John M. Seitman, Michael C. Scanlon, Jr., Ellsworth, Corbett, Seitman & McLeod and Lindley, Lazar & Scales for Defendants and Appellants.

Edwin L. Miller, Jr., District Attorney, and Anthony D. Samson, Assistant District Attorney, for Plaintiff and Respondent.

Robert E. Leidigh, Kathryn E. Donovan and John G. McLean as Amici Curiae on request of the Court of Appeal.

**OPINION**

**WIENER, J.**—This appeal presents the question whether the voluntary dismissal by the district attorney of a civil lawsuit for injunctive relief under the Political Reform Act entitled defendants to attorneys' fees as prevailing parties under Government Code sections 91003, subdivision (a), and 91012.[1] We conclude it did not and affirm the lower court's order denying the fees.

FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 1984, the San Diego County District Attorney filed a civil suit pursuant to the Political Reform Act of 1974 (§ 81000 et seq.) alleging

---

[1]All statutory references are to the Government Code unless otherwise noted. When citing subparts of a statute, we omit repetition of the word "subdivision."

that defendants[2] failed to report various campaign contributions made to San Diego mayoral candidate Roger Hedgecock by the now-defunct La Jolla securities and foreign currency trading conglomerate, J. David & Co., and one of its principals, Nancy Hoover. The district attorney's complaint sought injunctive relief in the form of amended campaign disclosure statements reflecting the omitted contributions.

An amended complaint was filed in June to which defendants demurred. Motions to strike specific allegations and to refer the matter to the Fair Political Practices Commission (FPPC or Commission) pursuant to section 91003(a) were also filed. The trial court denied the motions but granted the demurrer on a technical ground which was easily corrected in a second amended complaint filed in September.

On September 19, a county grand jury indicted Hedgecock, Hoover, Shepard and J. David Dominelli, the principal operating officer of J. David & Co., on criminal charges related in part to the filing of false campaign contribution forms.[3] At about the same time, the FPPC was completing an extensive investigation of the Hedgecock matter and preparing to file a 50-count civil complaint against virtually the same defendants as were named by the district attorney in the present case.[4]

As required by law because the district attorney is primarily responsible for enforcement of the Political Reform Act at the local level (§ 91001(b)), the FPPC sought the district attorney's permission to file its complaint. District Attorney Edwin L. Miller, Jr., responded to Roger Brown, chief of the FPPC's Enforcement Division, as follows: "As you are aware, on May 21, 1984, this office filed a civil action under the Political Reform Act charging as defendants Roger Hedgecock and others. Subsequent to filing of that action our criminal investigation in which your agency was of great assistance, was taken before the 1984-85 San Diego County Grand Jury. On September 19, 1984, that investigation resulted in an indictment by the

---

[2]Defendants include Roger Hedgecock, the Roger Hedgecock for Mayor Committee, treasurer of the committee Peter Q. Davis, Tom Shepard & Associates (Hedgecock's campaign consulting firm) and Thomas C. Shepard, the manager of that firm.

[3]We take judicial notice of the results of that criminal proceeding. On October 9, 1985, Hedgecock was convicted by a jury on one count of conspiracy and 12 counts of perjury. (Super. Ct. San Diego County Nos. CR 70436 and CR 71286.) Hoover, Shepard and Dominelli subsequently pled guilty to charges of conspiracy in exchange for the dismissal of other charges. (Super. Ct. No. CR 70436.)

[4]The FPPC action named J. David Dominelli as a defendant rather than J. David & Co., and also included an additional defendant, Roque de la Fuente, not named in the district attorney's suit.

Grand Jury of Roger Hedgecock, Tom Shepard, Nancy Hoover and J. David Dominelli on 15 felony counts of conspiracy and perjury arising from the campaigns involved in our civil action.

"We now have pending two entirely separate matters involving the same defendants. The Grand Jury's returning of the indictment and our consequent need to provide for numerous hearings, preliminary examinations and a trial in the criminal matter makes it most difficult for us to proceed concurrently with the civil litigation.

"We understand that your staff is prepared to file a civil action under the Political Reform Act, such suit resulting from an investigation conducted by the Fair Political Practices Commission staff, with some assistance from my office. It is my understanding that the action you propose to file encompasses the essential allegations of our civil matter and indeed goes beyond. We, therefore, concur in the filing of your civil action and, as is required by law, expressly consent to your initiation of such litigation. Accordingly, we will dismiss our pending civil matter following the filing of your lawsuit and will confine ourselves to the prosecution of our criminal case."[5]

Consistent with the above representation, on October 18 the district attorney dismissed his civil suit three days after the filing of the FPPC complaint. Based on that dismissal, defendants filed respective memoranda of costs which included requests for attorneys' fees. The district attorney responded by filing a motion to tax costs in which he argued that the voluntary dismissal did not make defendants prevailing parties within the meaning of sections 91003(a) and 91012 so as to justify an award of attorneys' fees. Relying on *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218 [145 Cal.Rptr. 691, 577 P.2d 1031], a case involving a request to award attorneys' fees pursuant to the reciprocal contract principles of Civil Code section 1717 following a voluntary dismissal, the trial court agreed with the district attorney and denied defendants' request for fees.

### DISCUSSION

■ Not surprisingly given the trial court's ruling, the parties focus largely on the applicability of *International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d 218. The district attorney argues that *Olen* stands for the general proposition that a voluntary dismissal does not make the defendant a prevailing party. Defendants seek to distinguish *Olen* on the ground that it dealt with a contractually based right to attorneys' fees (Civ. Code, § 1717) rather than one created solely by statute.

---

[5]Miller's letter is attached as an exhibit to the FPPC complaint (Super. Ct. San Diego County No. 529177) of which we take judicial notice. (Evid. Code, § 452(d)(1).)

On the facts of this case, however, we think it unnecessary to enter this very interesting debate on the scope of *Olen*. Even assuming *Olen* does not control, we believe the discretionary nature of the fee award authorization in sections 91003(a) and 91012 interpreted in light of applicable United States Supreme Court precedent requires a conclusion that prevailing *defendants* in actions under the Political Reform Act only be awarded attorneys' fees if the suit was frivolous, unreasonable or without foundation. While we express no opinion on the merits of the continuing FPPC action involving similar allegations, we have no difficulty concluding that in light of intervening events, the district attorney's suit was not frivolous or groundless.

I

Section 91003 provides that in a suit for injunctive relief, "[t]he court may award to a plaintiff or defendant who prevails his costs of litigation, including reasonable attorney's fees." In more general terms, section 91012 similarly provides that "[t]he court may award to a plaintiff or defendant . . . who prevails in any action authorized by this title his costs of litigation, including reasonable attorney's fees." The use of the word "may" in both statutes is significant in that it implies a legislative intent to retain judicial discretion in defining the circumstance in which costs and fees will be awarded. (See § 14; *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 133 [142 Cal.Rptr. 325], cf. *Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1027, fn. 7 [213 Cal.Rptr. 712].)

A portion of that definition was attempted in *Thirteen Committee* v. *Weinreb* (1985) 168 Cal.App.3d 528 [214 Cal.Rptr. 297] in which the court considered a defendant's argument that sections 91003(a) and 91012 should be interpreted to allow the award of attorneys' fees to a prevailing plaintiff only if the defendant's violation of the Political Reform Act was other than in good faith. Relying on a series of federal cases interpreting analogous federal statutes, the court rejected defendant's argument: "These decisions provide an impressive array of authority in aid of interpretation of a political reform enactment which is similarly dependent upon private litigation as a means of enforcement. Indeed, the declared intent and purpose of the Act acknowledges previous inadequate enforcement measures (§ 81001, subd. (h)) and the need for '[a]dequate enforcement mechanisms . . . [available to] private citizens . . . .' (§ 81002, subd. (g).)" (*Thirteen Committee* v. *Weinreb, supra,* 168 Cal.App.3d at p. 538.)

In reaching its conclusion, the *Weinreb* court drew in particular from the United States Supreme Court's decision in *Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1266, 88 S.Ct. 964]

which held that attorneys' fees should be awarded to a prevailing plaintiff under Title II of the Civil Rights Act of 1964 ". . . unless special circumstances would render such an award unjust." *Weinreb* similarly concluded that the ". . . policy encouraging vigorous enforcement through private litigation would be seriously eroded if attorney fees were to be denied to the prevailing party plaintiff in the absence of overriding special circumstances." (*Weinreb, supra,* 168 Cal.App.3d at p. 538.)

The *Piggie Park* standard adopted in *Weinreb* formed the backdrop for the Supreme Court's decision in *Christiansburg Garment Co.* v. *EEOC* (1978) 434 U.S. 412 [54 L.Ed.2d 648, 98 S.Ct. 694] which considered whether prevailing defendants are entitled to attorneys' fees based on the same standard as prevailing plaintiffs. The plaintiff in *Christiansburg* sued for violation of Title VII of the Civil Rights Act.[6] In a unanimous opinion, the Court initially observed: "[T]here are at least two strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff that are wholly absent in the case of a prevailing Title VII defendant. [¶] First, as emphasized so forcefully in *Piggie Park,* the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.' 390 U.S. at 402. Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law. As the Court of Appeals clearly perceived, 'these policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant.' 550 F.2d at 951." (*Id.,* at pp. 418-419 [54 L.Ed.2d at p. 655].) It went on to express concern that awarding fees to prevailing defendants as a matter of course ". . . would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." (*Id.,* at p. 422 [54 L.Ed.2d at p. 657].) "Hence," the court concluded, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." (*Ibid.*)

■ Given the past construction of sections 91003(a) and 91012 in *Weinreb* as being analogous to the similar attorneys' fee provisions in Title VII of the Civil Rights Act, we find the analysis in *Christiansburg* persuasive and applicable to the present case. While there are no doubt several salutary effects, *Weinreb* correctly states that the primary purpose of the prevailing party attorneys' fee provisions of the Political Reform Act is to encourage private litigation enforcing the act. The Supreme Court explained in

---

[6]Significantly, the plaintiff in *Christiansburg,* as here, was a government agency charged with enforcing the statute at issue.

*Christiansburg* that a rule which routinely awarded attorneys' fees to prevailing defendants ". . . could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been . . . [wronged], no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." (*Christiansburg Garment Co.* v. *EEOC, supra,* 434 U.S. at p. 422 [54 L.Ed.2d at p. 657].)

Just as such a standard was found to be inconsistent with the congressional purpose in enacting the attorneys' fee provisions of the Civil Rights Act, it is similarly inconsistent with the legislative purpose in enacting sections 91003(a) and 91012. In fact, the need to avoid discouraging potential plaintiffs under the Political Reform Act is perhaps even more critical than with respect to the federal civil rights statutes. Where a violation of civil rights has occurred, the injury, although usually noneconomic and often ephemeral, is at least direct. Where the actionable wrong is the adulteration of the political process, the damage to the citizenry is significant but the injury to any one citizen is not only nebulous but also indirect. The attorney's fee provisions of the Political Reform Act are designed to ameliorate the burden on the individual citizen who seeks to remedy what is essentially a collective wrong.

## II

■ Defendants respond that even if the *Christiansburg* standard applies to defendants seeking fees under sections 91003(a) and 91012, the trial court made no finding as to whether the district attorney's action was "frivolous, unreasonable or groundless." While this is true, we believe a remand for such a finding is unnecessary. We have previously taken judicial notice of the results of the district attorney's related criminal action (*ante,* fn. 3). Hedgecock was convicted of conspiracy and multiple counts of perjury arising out of his failure to make complete and accurate disclosures as required by the act. The remaining defendants including Shepard pled guilty to conspiracy in exchange for the dismissal of the perjury charges. While Davis was not named in the criminal action, he was responsible under section 81004 to use reasonable diligence in ascertaining that all disclosure statements filed by the Roger Hedgecock for Mayor Committee were true and complete. Without expressing any opinion on the ultimate merit of the FPPC action or any issues raised in Hedgecock's appeal from his conviction, we believe that the results of the criminal action make it impossible to conclude

that the present civil action arising out of the same underlying facts was "frivolous, unreasonable or groundless."

### III

■ We are not insensitive to the already significant burdens imposed on persons who in one way or another lead a "public" life by participating in the political process, nor do we minimize the need to encourage persons to devote their time to public service. Certainly the financial incentives available to those in the public sector are extremely limited if not grossly inadequate, and one need only look as far as the landmark libel case of *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412] and its progeny to realize that public figures retain precious little of what can be characterized as a "private" life. While the unfortunate by-product of our decision will be that public-spirited citizens without significant financial resources may be forced to bear the economic burden of defending against lawsuits which ultimately prove unmeritorious, such outcome is necessarily the result of the American Rule which refuses to award attorneys' fees as part of the costs of litigation recoverable by the prevailing party. (See *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634 [150 Cal.Rptr. 461, 586 P.2d 942].) In other words, the unfairness to defendants in Political Reform Act cases is no greater than that suffered by other categories of litigants as a result of the American Rule. On the other hand, where a candidate, officeholder or other participant in the political process engages in questionable conduct justifiably giving rise to a lawsuit to enforce the act, the costs of defending against such an action, even if the candidate or officeholder ultimately prevails, are appropriately viewed as a cost of political participation, even where, as here, the litigation continues after the election. (See *Weinreb, supra,* 168 Cal.App.3d at pp. 533, 535-536 [costs of prosecuting a defamation action against an opposing candidate are expenditures "for political purposes" reportable under the Political Reform Act]; see also *In re Request of Buchanan* (1979) 5 Ops. Cal.Fair Political Practices Com. 14, 15-16.)

The legitimacy of any system of representative government depends in large part on public perceptions regarding the integrity of the persons who act as public representatives and the purity of the process by which such representatives are selected. The Political Reform Act was enacted by initiative of the People of this state to further this compelling, indeed essential goal. In view of this compelling purpose, the need to avoid discouraging enforcement of the act must be deemed paramount. All of the defendants here voluntarily injected themselves into the political process. Hedgecock and Shepard in different ways derived their livelihoods from politics. While we understand the financial burden a suit such as this can impose, in view

of the fundamental need to enforce high standards of political ethics we do not believe it unfair to treat the price of defending against a reasonably grounded but ultimately unsuccessful allegation as a "cost of doing business" in politics which is appropriately borne by the political participant.

### DISPOSITION

Judgment affirmed.

Kremer, P. J., and Butler, J., concurred.