*622
 
 Opinion
 

 SILLS, P. J.
 

 Yes on Measure A, Citizens for Jobs and the Economy, and Catherine Kirkpatrick (plaintiffs) obtained a preliminary injunction compelling the City of Lake Forest (the city) to disclose the expenditures it made in a preelection challenge to measure A, a local initiative. The only issue in this case is whether a city’s litigation expenses incurred in pursuing a preelection challenge to the constitutionality or legality of a local initiative are reportable expenditures within the meaning of the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.). Because we hold they are not reportable, we reverse.
 
 [1]
 

 I
 

 Measure A, entitled the Orange County/El Toro Economic Stimulus Initiative, was a local initiative that qualified for the November 8,1994, general election. It proposed to amend the Orange County general plan to permit development of a commercial airport on land occupied by the El Toro Marine Corps Air Station upon the base’s closure. Alleging the proposed general plan amendment violated various state planning laws, the city, which borders the base, filed a preelection challenge to keep the measure off the ballot. (City of Lake Forest v. Tanney (Super. Ct. Orange County, 1994, No. 733984).)
 

 The city’s primary allegation was that the general plan amendment, if approved, would make the county’s general plan internally inconsistent. The city also alleged the proposed amendment was invalid since it had not been submitted to the county’s airport land use commission, the county’s existing land use element was legally inadequate, the initiative did not identify significant and major competing interests affected by the proposed airport, and general plans may not be amended by the initiative process.
 

 The trial court denied the city’s petition. Measure A was later approved by the voters.
 

 After the petition was denied, but prior to the election, plaintiffs filed this action seeking a preliminary and permanent injunction compelling the city to disclose the expenditures it made in its effort to keep measure A off the
 
 *623
 
 ballot. They argued the city was required to disclose this information under the Political Reform Act because the city’s preelection challenge was political, taken for the purpose of influencing the electorate. The city countered that the purpose of its challenge was solely legal, aimed at keeping an invalid initiative off the ballot.
 

 The trial court concluded the city’s action represented “the ultimate influence of the electoral process” because it sought to terminate the election, thereby depriving the electorate of the right to vote on the measure. Accordingly, it issued a preliminary injunction. The city appeals.
 
 [2]
 

 II
 

 The general rule is that an order granting a preliminary injunction is reviewed under the abuse of discretion standard.
 
 (Garamendi
 
 v.
 
 Executive Life Ins. Co.
 
 (1993) 17 Cal.App.4th 504, 512 [21 Cal.Rptr.2d 578].) However, where the issuance of a preliminary injunction “is dependent upon the construction of a statute, and the matter is purely a question of law, the standard of review is not whether discretion was appropriately exercised, but whether the statute was correctly construed.”
 
 (Id.
 
 at p. 512.) Here, the question is solely one of law, that is, whether the city’s expenditures were reportable within the meaning of the Political Reform Act. Accordingly, we review de novo the court’s order granting a preliminary injunction.
 

 The act requires any person who makes one or more expenditures must report them once certain thresholds are reached. (Gov. Code, §§ 82013, subd. (b), 84200.)
 
 [3]
 
 Under it, an “expenditure” is defined as “a payment, a forgiveness of a loan, a payment of a loan by a third party, or an enforceable promise to make a payment,
 
 unless it is clear from the surrounding circumstances that it is not made for political purposes.”
 
 (Gov. Code, § 82025, italics added.)
 

 
 *624
 
 Because the act does not define the term “political purposes,” we turn to the rules and regulations adopted by the Fair Political Practices Commission (Commission) for guidance. The Commission is charged with “[p]rovid[ing] assistance to agencies and public officials in administering the provisions” of the act. (Gov. Code, § 83113, subd. (c).) It is authorized to adopt “rules and regulations to carry out the purposes and provisions,” and which are “consistent with,” the act. (Gov. Code, § 83112.) The Commission adopted regulation 18225 which provides, insofar as it applies to the city here, that an expenditure is made for “political purposes” if it is “[f]or the purpose of influencing or attempting to influence the action of the voters for or against . . . the qualification or passage of any measure” (Cal. Code Regs., tit. 2, § 18225, subd. (a)(1)), or “is used for communications which expressly advocate the . . . qualification, passage or defeat of a clearly identified ballot measure.” (Cal. Code Regs., tit. 2, § 18225, subd. (b).)
 
 [4]
 

 
 *625
 
 The question, then, is whether the expenditures made by a city in a preelection challenge to the legality of a ballot measure are reportable expenditures within the meaning of the Political Reform Act of 1974. Plaintiffs assert it is well settled that such expenditures are reportable, citing
 
 Thirteen Committee
 
 v.
 
 Weinreb
 
 (1985) 168 Cal.App.3d 528 [214 Cal.Rptr. 297]. That case involved a mayoral candidate who sued an opponent for defamation in connection with statements made during the course of the campaign. The court, relying on California Code of Regulations, title 2, section 18225 and a Commission advisory opinion,
 
 In re Buchanan
 
 (May 1, 1979) FPPC Dec. No. 78-013 [5 FPPC Opns. 14; 1979 WL 52471], held the candidate’s litigation expenses were reportable expenditures. The court noted that the Commission “has officially interpreted [regulation 18225, subdivision (b)(1)] to include litigation expenses of a candidate seeking to remove an opponent from the ballot as a reportable expenditure.”
 
 (Thirteen Committee
 
 v.
 
 Weinreb, supra,
 
 168 Cal.App.3d at p. 533.)
 

 While the holding in
 
 Thirteen Committee
 
 clearly applies to candidates and not ballot measures, plaintiffs contend dictum in
 
 In re Buchanan
 
 makes it applicable to ballot measures: “When expenditures are made to support litigation aimed at. . . keeping a candidate
 
 or measure
 
 off the ballot, . . . the expenditures are made for the purpose of influencing the outcome of the election . . . against a particular candidate
 
 or measure
 
 and should be reported.”
 
 (In re Buchanan, supra,
 
 FPPC Dec. No. 78-013 [5 FPPC Opns. at pp. 15-16], italics added, fn. omitted.) Plaintiffs, however, did not read far enough. Footnote 3 of the Commission’s opinion specifically distinguishes between “[l]itigation challenging the results of an election” and “litigation challenging the constitutionality or legality of a statute enacted by an initiative.” Pointing out that the only connection between litigation challenging the constitutionality or legality of a measure and the election process is a “coincidental one,” the Commission stated that “such litigation would not give rise to any campaign disclosure obligations.” (5 FPPC Opns. at p. 16, fn. 3.)
 

 We agree with the Commission’s conclusion that a city’s preelection challenge to a ballot measure, based on a claim it is unconstitutional or
 
 *626
 
 illegal, is not an attempt to influence the electorate. The sole purpose of the litigation is to test the legal validity of the measure as drafted, that is, whether the measure is properly on the ballot at all. Similar to the actions taken by a public entity and its employees during the drafting stage of an initiative, the “audience at which these activities are directed is not the electorate per se.”
 
 (League of Women Voters
 
 v.
 
 Countywide Crim. Justice Coordination Com.
 
 (1988) 203 Cal.App.3d 529, 550 [250 Cal.Rptr. 161].) Since a city's activities in filing a preelection challenge to the legal validity of a ballot measure are not designed to influence voters for or against the measure, the reporting requirements of the act do not attach.
 

 Echoing the trial court’s rationale, plaintiffs then assert that removing a measure from the ballot represents the ultimate political act and attempt to influence the electorate because it prevents them from participating in the political process. They argue the city’s actions were particularly egregious here because the city tried to prevent all voters within the county—not just those residing within the city—from voting on the measure.
 
 [5]
 
 They insist that the proper course for the city would have been to wait until the measure passed before challenging its legality.
 

 The argument has no merit. As the courts have stated, the initiative process “is not a public opinion poll. It is a method of enacting legislation, and if the proposed measure does not enact legislation, or if it seeks to compel legislative action which the electorate has no power to compel,
 
 it should not be on the ballot.” (American Federation of Labor
 
 v.
 
 Eu
 
 (1984) 36 Cal.3d 687, 695 [206 Cal.Rptr. 89, 686 P.2d 609], italics added; see also
 
 Citizens for Responsible Behavior
 
 v.
 
 Superior Court
 
 (1991) 1 Cal.App.4th 1013, 1023 [2 Cal.Rptr.2d 648] [if initiative invalid, no purpose served by submitting it to voters].) Moreover, preelection challenges are desirable because “[t]he presence of an invalid measure on the ballot steals attention, time and money from the numerous valid propositions on the same ballot. It will confuse some voters and frustrate others, and
 
 an ultimate decision that the measure is invalid, coming after the voters have voted in favor of the measure, tends to denigrate the legitimate use of the initiative
 
 procedure.”
 
 (American Federation of Labor
 
 v.
 
 Eu,
 
 supra, 36 Cal.3d at p. 697, italics added.) To suggest, as plaintiffs do, that the filing of a preelection challenge is a political act because it seeks to take away the electorate’s right to vote, incorrectly presupposes the electorate has an inalienable right to vote on an unconstitutional or invalid measure.
 

 
 *627
 
 Because we hold the city’s expenditures incurred in association with the underlying action did not trigger the reporting requirements of the Political Reform Act of 1974, the order granting a preliminary injunction is reversed. The city shall recover its costs on appeal.
 

 Wallin, J., and Rylaarsdam, J., concurred.
 

 [1]
 

 Even though not reportable under the act, they are open to public scrutiny under other provisions of the law.
 

 [2]
 

 We invited the Fair Political Practices Commission and the League of California Cities to submit an application for leave to file an amicus curiae brief on the merits. (See Cal. Rules of Court, rule 14(c).) We granted the commission’s application, but we point out its brief states in a footnote that the “position taken in this brief is that of the General Counsel and the Legal Division of the agency. This issue has not been presented to the commission for a formal discussion and vote.” We also granted the application that was filed on behalf of the California Association of Counties and the cities of Alameda, Capitola, Carlsbad, Los Altos, Mission Viejo, Modesto, Monterey, Redlands, San Buenaventura, San Luis Obispo, San Pablo, and Vacaville. Amici curiae have weighed in on the side of the city.
 

 [3]
 

 The city is subject to the act. (Gov. Code, § 82047;
 
 Fair Political Practices Com.
 
 v.
 
 Suitt
 
 (1979) 90 Cal.App.3d 125, 132-133 [153 Cal.Rptr. 311].)
 

 [4]
 

 California Code of Regulations, title 2, section 18225 provides in relevant part: “(a) An expenditure is any monetary or nonmonetary payment made for political purposes.
 

 A payment is made for political purposes if it is:
 

 “(1) For the purpose of influencing or attempting to influence the action of the voters for or against the nomination or election of a candidate or candidates, or the qualification or passage of any measure; or
 

 “(2) Made by:
 

 “(A) A candidate, unless it is clear from surrounding circumstances that the payment was made for personal purposes unrelated to his or her candidacy or status as an office holder;
 

 “(B) A controlled committee;
 

 “(C) An official committee of a political party, including a state central committee, county central committee, assembly district committee or any subcommittee of such committee; or
 

 “(D) An organization formed or existing primarily for political purposes as defined in subsection (a)(1), including but not limited to a political action committee established by any membership organization, labor union or corporation.
 

 “(b) ‘Expenditure’ includes any monetary or non-monetary payment made by any person, other than those persons or organizations described in subsection (a), that is used for communications which expressly advocate the nomination, election or defeat of a clearly identified candidate or candidates, or the qualification, passage or defeat of a clearly identified ballot measure.
 

 “(1) ‘Clearly identified’ has the following meaning:
 

 “(A) A candidate is clearly identified if the communication states his name, makes unambiguous reference to his office or status as a candidate, or unambiguously describes him in any manner.
 

 “(B) A group of candidates is clearly identified if the communication makes unambiguous reference to some well-defined characteristic of the group, even if the communication does not name each candidate. A communication that clearly identifies a group of candidates and expressly advocates their election or defeat is reportable as an expenditure, but the expenditure need not be allocated among all members of the class or group on the campaign statement reporting the expenditure.
 

 “(C) A measure that has qualified to be placed on the ballot is clearly identified if the communication states a proposition number, official title or popular name associated with the measure. In addition, the measure is clearly identified if the communication refers to the
 
 *625
 
 subject matter of the measure and either states that the measure is before the people for a vote or, taken as a whole and in context, unambiguously refers to the measure.
 

 “(D) A measure that has not qualified to be placed on the ballot is clearly identified if the communication refers to the subject matter of the measure and to the qualification drive.
 

 “(2) A communication ‘expressly advocates’ the nomination, election or defeat of a candidate or the qualification, passage or defeat of a measure if it contains express words of advocacy such as ‘vote for,’ ‘elect,’ ‘support,’ ‘cast your ballot,’ ‘vote against,’ ‘defeat,’ ‘reject,’ ‘sign petitions for’ or otherwise refers to a clearly identified candidate or measure so that the communication, taken as a whole, unambiguously urges a particular result in an election.”
 

 [5]
 

 Plaintiffs never explain why this is relevant. Perhaps the argument is an oblique reference to Government Code section 81009.5, subdivision (b), which prohibits local governments from imposing additional or different filing requirements than those listed in the act unless those requirements apply only to “a local ballot measure which is being voted on only in that jurisdiction.” If so, we reject it.