[No. E024110. Fourth Dist., Div. Two. Apr. 10, 2000.]

CHUCK DUNN, Plaintiff and Appellant, v.
JURUPA UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

**COUNSEL**

Gregory W. Brittain for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo and Nicholas T. Calderon for Defendants and Respondents.

## OPINION

**WARD, J.**—Plaintiff and appellant Chuck Dunn was a teacher employed by defendant and respondent Jurupa Unified School District (District). As a result of charges brought in 1993, the District terminated plaintiff. In 1997, four years later, plaintiff filed an action against the District and former District school board member David Barnes, for alleged violation of the Political Reform Act (Gov. Code, § 81000 et seq.) in the conduct of the termination proceedings. The court ordered plaintiff to post $25,000 security in the Political Reform Act action. Plaintiff failed to post any security and the court dismissed the action. Plaintiff now appeals, alleging the court erred in requiring him to post security. Plaintiff also raises additional issues. We do not reach the additional issues because we find the failure to post security dispositive.

### FACTS AND PROCEDURAL HISTORY

Plaintiff was formerly a special education teacher at a high school in the District. In October of 1993, a student, Nancy W., accused him of sexual harassment and stalking. The District's school board voted to initiate termination proceedings against plaintiff. Defendant and respondent Barnes was a member of the school board; Barnes voted in the majority, which recommended terminating plaintiff. An independent Commission on Professional Competence (Commission) investigated several charges and ultimately voted unanimously to terminate plaintiff for immoral conduct with a student, dishonesty, and unfitness for duty. Plaintiff sought a writ of administrative mandate. The superior court upheld the termination; this court affirmed the judgment upon plaintiff's appeal. (*Dunn v. Commission on Professional Competence* (June 5, 1998, E019255) [nonpub. opn.].)

Four years after the termination, in December of 1997, plaintiff filed the present action alleging the District's school board, and Barnes in particular, improperly voted to start termination proceedings against him, inasmuch as Barnes allegedly had a financial conflict of interest,[1] in violation of the Political Reform Act.

---

[1] Plaintiff asserts that in 1993 he tried to buy a controlling ownership interest in a community weekly newspaper. Barnes was the editor of that newspaper. If plaintiff had succeeded in buying the newspaper, he would have fired Barnes as editor. Barnes's job as editor was Barnes's primary source of income. Barnes allegedly was upset that plaintiff was

Defendants and respondents moved to require plaintiff to furnish security, under Government Code section 91012. Government Code section 91012 provides: "The court may award to a plaintiff or defendant other than an agency, who prevails in any action authorized by this title his costs of litigation, including reasonable attorney's fees. On motion of any party, a court shall require a private plaintiff to post a bond in a reasonable amount at any stage of the litigation to guarantee payment of costs."

Plaintiff opposed the request for a security bond on numerous grounds. He also asked the court to waive a bond requirement, averring that he could not afford to post a bond even for $6,300 in anticipated court costs, exclusive of any amount for attorney fees. The court ordered plaintiff to furnish a $25,000 security bond; plaintiff failed to furnish any security bond and the court dismissed the action.

Plaintiff now appeals.

## ANALYSIS

Plaintiff attacks the bond requirement on numerous grounds: (1) He argues the District was not entitled to security because it is an "agency" under Government Code section 91012, and thus excluded from the protection of security posting. He argues that Barnes also was not entitled to a security posting because the District was paying for his defense, and he therefore did not incur any costs or attorney fees. (2) Plaintiff further contends that an ultimate award of attorney fees at the conclusion of the action depends upon a finding that the litigation is frivolous (Gov. Code, § 91003); the court below did not find his litigation was frivolous, and therefore the security posting should not include an increment for attorney fees. (3) Government Code section 91012 provides for posting security for "costs," but not attorney fees; therefore, the order to furnish security could not properly include any amount for attorney fees. (4) Plaintiff urges that the trial court possessed, but failed to exercise, discretion to reduce the required security on account of plaintiff's inability to pay.

### I. Barnes Was Entitled to a Security Posting Even Though the Agency Was Providing His Defense

██ Plaintiff initially contends that neither the District, as an agency, nor Barnes, as an individual, was entitled to a security posting under

---

trying to buy the newspaper, and he allegedly knew that, if plaintiff were terminated as a teacher, plaintiff would be unable to purchase the interest in the newspaper he sought. Therefore, plaintiff reasons, Barnes had a financial interest which affected his vote to begin termination proceedings against plaintiff.

Government Code section 91012. ■ Plaintiff raises an issue of statutory construction, a matter which we determine de novo. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

■ Government Code section 91012 provides that an award of costs, including attorney fees, may be made to a prevailing plaintiff or defendant, "other than an agency." The District concedes it is an "agency" within the meaning of Government Code section 91012, and thus would not be entitled to an award of costs for itself. The provision of security for payment of those costs therefore cannot be ordered in favor of the District.

Barnes, however, is not an agency, and the court could properly—and arguably was required to—make an order for security in his favor. Plaintiff urges that, because the District was providing Barnes's defense, Barnes did not actually incur any costs or attorney fees against which security would need to be provided. Therefore, he argues, the court could not order security in favor of Barnes.

Only two kinds of defendants are subject to an action under the Political Reform Act: governmental agencies and individual governmental officials. Government Code section 91012 precludes an agency from recovering its costs and attorney fees, but there is no such express exclusion for individual officials. Neither is there any provision that individual governmental officials are entitled to an award of costs, including attorney fees, only when they have personally incurred such expenses. Accordingly, Government Code section 91012 does not prohibit Barnes, an individual, from recovering costs, including attorney fees.

*Citizens for Oxnard v. Maron* (1983) 145 Cal.App.3d 702 [193 Cal.Rptr. 647], supports our conclusion. There, private persons sued a governmental official for alleged violation of the Political Reform Act. The official's agency provided her defense. The official prevailed in the action when her demurrer was sustained without leave to amend. The Court of Appeal held that the official's assignment of her right to recover fees to the agency did not affect her entitlement to the award. (*Id.* at p. 707.) Similarly, the District's provision of a defense to Barnes does not affect his entitlement to an award of costs, and thus does not affect his entitlement to request an order for security against the potential award of costs.

II. *The Order for Security Properly Included an Amount for Attorney Fees*

Plaintiff raises two distinct claims which, he argues, precluded the court from ordering him to post any security for attorney fees, as opposed to court

costs. First, he contends that a prevailing defendant is entitled to recover attorney fees only if the action is found to be "frivolous, unreasonable or without foundation." (*People v. Roger Hedgecock for Mayor Com.* (1986) 183 Cal.App.3d 810, 815 [228 Cal.Rptr. 424]; see also *Community Cause v. Boatwright* (1987) 195 Cal.App.3d 562, 575 [240 Cal.Rptr. 794].) The court below declined to find that plaintiff's action, thus far, was frivolous; therefore, plaintiff concludes, if the court was not willing to say at this stage that Barnes ultimately *would* be granted attorney fees, the order for security *could not* include any component for attorney fees. Second, plaintiff urges that, although the first sentence of Government Code section 91012 provides for an award to a prevailing party of "costs, including attorney fees," the second sentence, providing for posting of security, refers only to the posting of security for "costs." Plaintiff contends that an order for security may therefore apply only to costs, and may not include any component for security for attorney fees.

Both questions call for the construction of statutory language, in light of the legislative purpose. As we previously indicated, we determine questions of statutory construction independently.

Taking the second point first, we conclude that the plain language of Government Code section 91012 authorizes the court to order the posting of security for anticipated costs, including attorney fees. The first sentence of Government Code section 91012 explicitly defines the costs which may be awarded to include attorney fees. There would be little point in including a concomitant provision to require security for such "costs" if the security could not also include a component for such anticipated attorney fees.

We also reject plaintiff's suggestion that attorney fees cannot be included as a part of the required security in the absence of a finding that the litigation is frivolous. The requirement of posting security is called for when it appears unlikely that the plaintiff will prevail, but the action may not be so clearly unmeritorious that it will not be allowed to proceed. The court here did find that plaintiff was unlikely to prevail in his action. In addition, an action which is not necessarily frivolous when begun may become so later. (See, e.g., *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 422 [98 S.Ct. 694, 700-701, 54 L.Ed.2d 648].) An action that may be immediately adjudged frivolous need not await further litigation; if the suit is terminated at once, the plaintiff might not have to post security, but he or she could instead be liable to pay costs, including attorney fees.

### III. *The Court Did Not Abuse Its Discretion in Setting the Amount of the Bond*

Plaintiff next contends that the court failed to recognize that it had discretion to waive the bond, and/or failed to properly exercise its discretion.

Plaintiff urges that the court should have waived the bond requirement for him on account of his inability to afford to post security.

■ The proper standard of review is whether the trial court abused its discretion in setting the amount of the undertaking. (See *Selma Auto Mall II v. Appellate Department* (1996) 44 Cal.App.4th 1672, 1682 [52 Cal.Rptr.2d 599].)

■ Government Code section 91012 provides in relevant part that, "On motion of any party, *a court shall require* a private plaintiff to post a bond in a reasonable amount . . . ." (Italics added.) The statutory language is cast in mandatory terms; nothing in the provision requires the trial court to take the plaintiff's means into consideration in determining whether to require a bond. (Cf. *Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1587-1588 [38 Cal.Rptr.2d 849] [vexatious litigant statutes do not require the trial court to consider the litigant's financial condition in determining the amount of security to be posted].)

The real question is: what is a "reasonable amount"? The court here obviously did exercise its discretion in setting the amount. Defendants had asked for a bond of over $43,000. The court reduced the requested amount and ordered plaintiff to post a bond of $25,000. Plaintiff has not shown that the required undertaking was unreasonable.[2]

## IV. *Plaintiff Was Unlikely to Succeed in His Action*

The gravamen of plaintiff's action is that he had a tentative agreement or an agreement in principle in 1993 to purchase a controlling interest in the weekly newspaper. If plaintiff had purchased the newspaper, he would have fired Barnes as editor. Barnes therefore had a financial interest in keeping his editor's job that should, under the Political Reform Act, have disqualified him from voting on the question of plaintiff's termination.

The court properly found that plaintiff was unlikely to succeed on the merits of his claim, and thus properly required plaintiff to post security.

---

[2]Plaintiff's own declaration averred that he had monthly income of $3,000, he owned three parcels of undeveloped land, and he had $2,000 or $3,000 worth of gold nuggets. Plaintiff owned and operated a sporting goods shop. Other declarations he submitted in the action averred that individuals were ready to lend him substantial sums of money to help purchase the newspaper. The record does not support plaintiff's claim that he lacked financial resources to post a bond.

Plaintiff urges that his action was not frivolous or groundless, inasmuch as he was able to submit numerous declarations supporting his theory of the case. The number of declarations alone does not, however, determine the meritoriousness of plaintiff's claims.

Defendants presented declarations of the three shareholders of the corporation that owned the newspaper. Barnes was one shareholder; he averred that he never agreed to sell his interest to plaintiff. The majority shareholder also averred that he did not agree to sell the newspaper to plaintiff; at most, he invited plaintiff to deposit substantial moneys into an escrow account before he would discuss selling his interest. The third owner, a minority shareholder, likewise never agreed to sell his interest to plaintiff. The newspaper owners averred that, although plaintiff inquired about purchasing the newspaper, he did so in 1994 or 1995, after he was terminated.

Plaintiff submitted declarations showing that he made inquiries into purchasing the newspaper in 1993, not 1994 or 1995. Nevertheless, plaintiff's declarations do not and cannot dispute the essential thrust of the defense declarations, that the majority shareholder would not sell unless and until plaintiff had put substantial moneys into escrow. Plaintiff's own declaration corroborates the majority shareholder's account on this point: plaintiff recited that the majority shareholder asked him to put $100,000 into escrow before he would go over the books with plaintiff. Plaintiff never placed any money into escrow.

Otherwise, plaintiff's declarations show only that plaintiff actively talked about buying the newspaper and that he inquired about buying the newspaper. Several people knew that plaintiff had talked about being interested in buying the newspaper. Plaintiff may or may not have been able to raise enough cash to purchase the newspaper. Rumors and innuendo, however, are not the same thing as an agreement, a tentative agreement, or an agreement in principle to purchase the newspaper. Plaintiff never took any concrete steps to obtain an ownership interest in the newspaper.

Pure speculation that plaintiff may have "wanted" to buy the newspaper, no matter how widely such a rumor spread, could not create a "financial interest" that disqualified Barnes from voting on plaintiff's termination. Otherwise, anyone could create the appearance of a conflict of interest merely by "inquiring" into ownership of any official's property or business.

Plaintiff was unlikely to succeed on the merits; indeed, under the factual showing made, the trial court would have been wholly justified in finding the action frivolous, although it did not actually do so.

## DISPOSITION

The trial court properly required plaintiff to post a bond in the action below and set a reasonable amount for the bond. Plaintiff failed to file any bond. The action was properly dismissed.

Richli, Acting P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2000.